**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Notestine Manor, Inc. v. Logan Cty. Bd. of Revision,* **Slip Opinion No. 2018-Ohio-2.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2018-Ohio-2**

NOTESTINE MANOR, INC., APPELLEE, *v*. LOGAN COUNTY BOARD OF REVISION ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Notestine Manor, Inc. v. Logan Cty. Bd. of Revision,* **Slip Opinion No. 2018-Ohio-2.]**

*Taxation—Property—Valuation—Government-subsidized low-income housing under federal "Section 202" program—Preference for market-rent approach over contract-rent approach is presumptive, but not conclusive—Valuation method must account for affirmative value of government subsidies—Contract-rent approach is appropriate when contract rents do not exceed generally available market rents.*

(No. 2015-0791—Submitted October 17, 2017—Decided January 2, 2018.)

APPEAL from the Board of Tax Appeals, No. 2014-2543.

_____

**Per Curiam.**

{¶ 1} This appeal involves the tax valuation of government-subsidized low-income housing under the federal Section 202 program. Appellants, the Logan County auditor and the Logan County Board of Revision ("BOR") (collectively, "the county"), valued the property for tax year 2013 at $811,120, but the Board of Tax Appeals ("BTA") adopted the opinion of the property owner's appraiser, who valued the property at $75,000.

{¶ 2} On appeal, the county contends that the BTA's decision is contrary to our decision in *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, because the BTA improperly relied upon an appraisal that used below-market contract rents rather than market rents. The county also calls for us to clarify or overrule *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984. We disagree with the county's position and therefore affirm the BTA's decision.

## FACTUAL BACKGROUND

{¶ 3} At issue is an 11-unit residential rental property developed as low-income housing under Section 202 of the Housing Act of 1959, codified at 12 U.S.C. 1701q. The property is titled to appellee, Notestine Manor, Inc., a nonprofit corporation with 26 U.S.C. 501(c)(3) status as a charitable institution.

{¶ 4} Section 202 provides assistance in the form of a "capital advance" from the United States Department of Housing and Urban Development ("HUD") to build rental housing for very low-income elderly individuals. 12 U.S.C. 1701q(c)(1); Charles L. Edson, *Affordable Housing—An Intimate History*, Journal of Affordable Hous. & Community Dev.L. 193, 198-199 (Winter 2011). Notestine's president, Robert Bender, testified that the construction costs for the subject property were about $1.5 million, and the federal capital advance was about $1.3 million.

**{¶ 5}** The Section 202 program also provides for a "project rental assistance" contract, or PRAC, which sets forth the rights and duties of the owner and HUD with respect to the project. 12 U.S.C. 1701q(c)(2); 24 C.F.R. 891.105. The rent to be paid by eligible tenants is strictly limited and is tied to the individual's income. 12 U.S.C. 1701q(c)(3). The PRAC for Notestine covers all 11 units and requires tenants to be at least 62 years old and have income under 50 percent of the area median income. Bender testified that the rent level dictated by HUD for Notestine was $407 per month, including utilities, with any overage payable to HUD. Notestine's tenants pay up to 30 percent of their adjusted gross income on rent, with HUD subsidizing any difference.

**{¶ 6}** A "Capital Advance Program Use Agreement" and a "Capital Advance Program Regulatory Agreement" are recorded in the property's chain of title. The agreements detail the overriding control that HUD exercises over Notestine's use of the property. The use and/or regulatory agreements provide:

- HUD is "is possessed of an interest in the above described Project such that the Owner shall remain seized of the title to said property and refrain from transferring, conveying, assigning, leasing, mortgaging, pledging, or otherwise encumbering or permitting or suffering any transfer, conveyance, assignment, lease, mortgage, pledge or other encumbrance of said property or any part thereof without the release of said covenants by HUD."
- The term of the Capital Advance Program Use Agreement is "not less than 40 years from June 1, 2013, unless otherwise approved by HUD."
- Tenancy is limited by Section 202 to low-income elderly tenants.
- No changes in Notestine's bylaws or articles of incorporation may occur without HUD approval, nor can any person associated with Notestine have any interest in any of Notestine's contracts.

- All project income must be deposited in a reserve fund.
- Rents for Notestine Manor were fixed at $407 per month. Although Notestine could petition HUD for a rent increase based on increased expenses, HUD would never grant an increase that would show a monthly surplus of more than $1,000

## COURSE OF PROCEEDINGS

{¶ 7} The auditor valued the property at $811,120 for tax year 2013, which was a reappraisal year in Logan County. Notestine filed a complaint seeking a reduction to $165,000. At the BOR hearing, Notestine presented the testimony of Robert Bender, its president, who stated that the building on the subject property was roughly 67 percent complete on the tax-lien date. Notestine also presented an owner's opinion of value of $165,000. That valuation was based on an income approach that used actual rent and expenses. The BOR retained the auditor's value, and Notestine appealed to the BTA.

{¶ 8} At the BTA, Notestine presented the appraisal report and testimony of Cynthia L. Hatton Tepe. Because of the restrictions on the property, Tepe rejected the cost approach. She also rejected the sales-comparison method, due to a lack of sales. Tepe performed an income-capitalization approach based on the actual restricted rents, and she used actual and market-comparable expenses. Tepe derived a capitalization rate by using the direct-comparison, band-of-investment, and debt-coverage formula techniques, and applied that rate to a net-operating-income figure. Tepe took into account the incomplete state of the project on the lien date by deducting an amount of rent loss *after capitalizing* the income to $100,000. That reduction amount was $26,862. Thus, under her income approach, Tepe concluded that the value of the property was $75,000 as of January 1, 2013, reflecting a value of $6,818 for each of the 11 units.

{¶ 9} After reviewing the evidence, the BTA adopted Tepe's appraisal. First, the BTA rejected the county's argument that the use restrictions were not in

4

place on the lien date. In fact, although the actual rent amount was not finalized until the PRAC was signed, the use restrictions themselves were recorded on July 26, 2012.

{¶ 10} Second, the BTA rejected the argument that actual restricted rent should not be used under *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16, 523 N.E.2d 826 (1988), which calls for valuing properties as if unencumbered. The BTA noted as a crucial distinction that the Section 8 subsidies at issue for the subject properties in *Alliance Towers* "resulted in contract rent that typically exceeded the rents generally available in the market." BTA No. 2014-2543, 2015 Ohio Tax LEXIS 2174, *10, citing *Alliance Towers*, at 21, fn. 4. By contrast, "[n]othing in the record" in this case "shows that the contract rents exceed those generally available in the market or that the property benefits from additional tax incentives." 2015 Ohio Tax LEXIS 2174, *11. Through this analysis, the BTA sought to reconcile *Alliance Towers* with *Woda Ivy Glen*'s holding that governmentally imposed use restrictions should be taken into account when valuing properties subject to those restrictions. *Woda Ivy Glen,* 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 23.

{¶ 11} Third, the BTA rejected the county's objection to the reduction determined by the appraiser on account of the incomplete status of the project on the lien date.

{¶ 12} Based on its analysis, the BTA adopted the appraiser's valuation of $75,000. The county has appealed.

## ANALYSIS
### Standard of review

{¶ 13} Our review of a legal issue is de novo, not deferential. *See Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. But if we determine that there was no legal error, we review the BTA's decision concerning the weighing of appraisal evidence

under a highly deferential abuse-of-discretion standard. *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9, 14.

**The BTA properly applied *Alliance Towers* and *Woda Ivy Glen***

*1. The case law requires a market-rent approach when federal subsidies would inflate the property's value*

{¶ 14} Although the county presents six propositions of law, the essence of the first, second, and sixth propositions may be distilled and summarized as a single proposition: Because the property at issue constitutes an apartment property built and operated under the auspices of HUD, the property must be valued with due regard for market rent and current returns on mortgages and equities. Citing *Alliance Towers*, 37 Ohio St.3d 16, 523 N.E.2d 826, paragraph two of the syllabus, the county argues that the BTA's adoption of the Tepe appraisal is an error of law, inasmuch as the appraisal relies on contract rent rather than market rent.

{¶ 15} At the outset, this argument begs the question of how much "regard to market rent" is due under the factual circumstances. That inquiry, in turn, calls for close attention to *Alliance Towers*, which involved a consolidated disposition of five BTA appeals involving four different subsidized projects: the Alliance Towers project, the Sunset Square project, the Murray Commons project, and the Staunton Commons project. *Alliance Towers* resulted in a three-justice-plurality opinion, two syllabus paragraphs that garnered four votes each, and a judgment split four-to-three on three of the five appeals.

{¶ 16} The rejection of the county appraiser's "reversion/shelter valuation approach" in the two Sunset Square appeals was unanimous, however. That approach was designed to "take[ ] into account that a willing buyer of subsidized property will consider all aspects inherent in government financial support by way of mortgage, contract rental, subsidies and tax savings." *Sunset Square, Ltd. v. Miami Cty. Bd. of Revision*, BTA No. 83-A-451, 1986 Ohio Tax LEXIS 457, *6

6

(Mar. 27, 1986), *rev'd sub nom. Alliance Towers.* Because all seven justices voted to reverse in the *Sunset Square* appeals, all apparently rejected that approach, and the three-justice-plurality opinion explained that "tax shelter advantages" constitute "intangible items" that "do not make the real estate more valuable." *Id.* at 23; *accord Woda Ivy Glen*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, at ¶ 29, fn. 4 (discerning "ample reason to disregard" the income-tax credits associated with the low-income-housing tax-credit project at issue, in that the credits "qualify as intangible interests separable from the real property").

**{¶ 17}** As to the three remaining appeals, the *Alliance Towers* court split four-to-three. In those appeals, the distinction between the appraisals turned on use of the cost approach and the particular way in which competing appraisers developed an income approach. The three-justice-plurality opinion broadly explains that in each appeal "[t]he taxpayers' appraisers valued the property free and clear of any encumbrance, whereas the appraisers for the taxing authorities presented values of the properties as encumbered by the mortgages and restrictions imposed by the agreements with the federal government." 37 Ohio St.3d at 22, 523 N.E.2d 826.

**{¶ 18}** We explained the significance of *Alliance Towers* in *Woda Ivy Glen* and *Columbus City Schools*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694. In *Woda Ivy Glen*, we considered whether the highest and best use of real estate should be determined by taking into account the significant tenant and rent restrictions recorded in the chain of title as prerequisites for the low-income-housing tax credit ("LIHTC"). We held that the restrictions were governmental restrictions on land use and that the property should therefore be valued as a low-income-housing development.

**{¶ 19}** *Woda Ivy Glen*, however, addressed only the proper determination of highest and best use; it did not involve a conflict between a contract-rent

appraisal and a market-rent appraisal. It therefore does not control the resolution of the issue presented here.

{¶ 20} In *Columbus City Schools*, we confronted a BTA decision rejecting a market-rent appraisal of properties subject both to LIHTC and the so-called Section 8 program subsidies available through 42 U.S.C. 1437f. Despite the appraisal's explicit discussion of the subsidies, the BTA found that the appraisal directly contradicted two principles: property valuation must disregard the affirmative value of government subsidies and must take into account use restrictions on property. BTA No. 2011-714, 2014 Ohio Tax LEXIS 2505 (Apr. 21, 2014), *4, *rev'd*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694. The first principle derived from *Alliance Towers*; the second from *Woda Ivy Glen*.

{¶ 21} The BTA opined that by using market rent, the appraiser was "ignor[ing] the LIHTC restrictive covenant" while also "tak[ing] into account the value of federal government subsidies." *Id*. at *4-5. In reversing, we emphasized that under *Alliance Towers*, market rents (instead of contract rents) are used. *Columbus City Schools* at ¶ 16. In that way, the " 'affirmative value' " of government subsidies is "adjusted out" of the property valuation. *Id.* at ¶ 17. We attempted to correct an apparent misreading of *Woda Ivy Glen* that would uniformly preclude the use of a market-rent appraisal. *Id.* at ¶ 19, 22, 24.

2. *The case law does not preclude the use of contract rent for a Section 202 property*

{¶ 22} The BOE now reads *Columbus City Schools* as setting the opposite iron rule—that a market-rent approach is required and a contract-rent approach is precluded in all cases. Although we did state that use of market rents and expenses constituted a "rule" to be applied when valuing low-income government housing generally, *id*. at ¶ 16, 22, the preference for market rent over contract rent is presumptive, not conclusive. The guiding principle from *Alliance Towers*, articulated in *Woda Ivy Glen* and reiterated in *Columbus City Schools*, is that the

valuation method must account for the "affirmative value" of government subsidies, i.e., the tendency of government subsidies to inflate the value above what the market would otherwise bear. *Woda Ivy Glen*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 28, 29; *Columbus City* Schools, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, ¶ 17. That "affirmative value should be adjusted out of the property valuation." *Id.* With Section 8 rent subsidies, using market rent removes the affirmative value of government subsidies because the subsidies tend to inflate rents above market rent.

**{¶ 23}** But the property at issue here, which is in the Section 202 program, presents a different situation. The rents appear to be minimal, and any federal subsidization is strictly controlled by rigorous HUD-imposed restrictions on the accumulation of surpluses. There is no evidence here that any adjustment from contract rent to market rent would eliminate the "affirmative value" of government subsidies.

**{¶ 24}** In sum, the *Alliance Towers* premise favoring market rent is that the Section 8 rent subsidies may elevate rents above the general rental market. But this case is distinguishable in that, as the BTA held, "[n]othing in the record * * * shows that the contract rents exceed those generally available in the market or that the property benefits from additional tax incentives." BTA No. 2014-2543, 2015 Ohio Tax LEXIS 2174, *11, citing *Alliance Towers*, 37 Ohio St.3d at 20, 523 N.E.2d 826, fn. 4.

### The amendments to R.C. 5713.03 do not affect the issue in this appeal

**{¶ 25}** R.C. 5713.03 governs the valuation of real estate. Because this case involves tax year 2013, we apply the version of R.C. 5713.03 found in 2012 Am.Sub.H.B. No. 487 ("H.B. 487"). *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision,* 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 18. That version of the statute calls for the auditor to determine the true value of the "fee simple estate, as if unencumbered." Under its fourth proposition of law, the county

contends that the "as if unencumbered" language provides an additional basis for disregarding the restrictive covenants in valuing the subject property. We conclude that H.B. 487's amendment to R.C. 5713.03 was not intended to alter the doctrine of *Woda Ivy Glen*.

{¶ 26} First, it is important to acknowledge what we have already held concerning the H.B. 487 amendment to R.C. 5713.03. In *Terraza 8*, we held that H.B. 487 was intended to "override" *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782. *Terraza 8* at ¶ 26. *Berea* addressed "whether a property should be valued as if unencumbered even when it was the subject of a recent arm's-length sale." *Terraza 8*, ¶ 26-27. *Berea* held that the sale price from a recent arm's-length sale shall be the true value for taxation purposes. *Berea* at ¶ 13. In *Terraza 8*, we decided that under the H.B. 487 amendment, evidence extrinsic to the sale should be considered when determining whether the sale price was affected by encumbrances upon the property. *Id.* at ¶ 27. Under *Terraza 8*, a sale price of encumbered property is presumptive, but not conclusive, evidence of the value of the unencumbered fee-simple estate. *Id.* at ¶ 32-33. The rebuttable nature of this presumption opens the door to considering appraisal evidence of the property's unencumbered value. It is crucial to note in this context that the encumbrance at issue in *Terraza 8* was a commercial lease, not a governmentally imposed restriction on the use of the property.

{¶ 27} Second, we consider whether H.B. 487 additionally intended to override the doctrine of *Woda Ivy Glen*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, that governmental use restrictions should be taken into account when valuing property consisting of federally subsidized low-income housing. The county notes that H.B. 487 codifies language set forth in paragraph one of the syllabus of *Alliance Towers* by requiring the fee-simple estate to be valued as if unencumbered. But even at the time that the *Alliance Towers* syllabus was

formulated, that rule was not without exception. Our case law acknowledged that zoning restrictions, which can be viewed as a type of encumbrance, should be taken into account in determining tax value. *Porter v. Cuyahoga Cty. Bd. of Revision*, 50 Ohio St.2d 307, 364 N.E.2d 261 (1977). *See also* Appraisal Institute, *Dictionary of Real Estate Appraisal*, 76 (6th Ed.2015) ("[a]ny claim or liability that affects or limits the title to property" is an encumbrance). Similarly, by definition, the Appraisal Institute regards an appraisal of the "fee simple estate" as calling for a valuation of the "[a]bsolute ownership unencumbered by any other interest or estate, *subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat*." (Emphasis added.) *Id*. at 90. And Ohio's pre-H.B. 487 case law further embodies the distinction between private and governmental restrictions by acknowledging that although privately imposed restrictions are disregarded when applying the *Alliance Towers* syllabus, tax valuation should take into account the effect of "limitations caused by involuntary, governmental actions." *Muirfield Assn., Inc. v. Franklin Cty. Bd. of Revision*, 73 Ohio St.3d 710, 711, 654 N.E.2d 110 (1995).

{¶ 28} In *Woda Ivy Glen*, we held that LIHTC restrictions came within the "governmental actions" acknowledged in *Muirfield Assn*., even though the LIHTC restrictions were arguably more voluntary than some other governmental actions. *Id*. at ¶ 23-24. We also reconciled taking the LIHTC use restrictions into account when valuing the property with paragraph two of the syllabus in *Alliance Towers*, which addressed the valuation of government-subsidized properties. *Id*. at ¶ 26-30.

{¶ 29} Against this case-law background, we do not read H.B. 487's enactment of "fee simple as if unencumbered" as reflecting a legislative intent to supersede the case law's repeated acknowledgment that the effect of governmentally imposed restrictions should be taken into account when determining tax value. More specifically, we do not read the H.B. 487 amendment to R.C. 5713.03 to override the doctrine of *Woda Ivy Glen*.

**Whether highly restricted low-income-housing properties should have more than a nominal tax value is an issue for the legislature to resolve**

{¶ 30} Under its third and fifth propositions of law, the county contends that the use of a contract-rent income approach in this context effectively forces the county to extend a local property-tax subsidy to the property at issue, a result that Ohio law allegedly does not authorize. The county highlights service calls for fire or police services from the property that the taxes will not cover; and additionally, the county notes that reduced value of the property shifts taxes to other taxpayers by altering the reduction factors on outside levies.

{¶ 31} We have held that despite their essentially nonprofit character and the charitable-minded motives behind them, Section 202 properties like that at issue here do not qualify for charitable-use exemption, because their primary use is residential. *NBC-USA Hous., Inc.—Five v. Levin,* 125 Ohio St.3d 394, 2010-Ohio-1553, 928 N.E.2d 715, ¶ 9. In her concurring opinion in *NBC-USA*, Justice Lundberg Stratton opined that the Section 202 project should be deemed a charitable use. *Id.* at ¶ 23 (Lundberg Stratton, J., concurring). And it is true that a Section 202 project like the one at issue here is broadly analogous to public housing in its purpose and function. By contrast, the later-developed Section 8 program involved private developers in making low-income housing available through the subsidization of rents to a level the market could bear. Edson, *Affordable Housing—An Intimate History,* at 201.

{¶ 32} Contrary to the county's argument, however, Ohio law does not prohibit applying valuation principles merely because they generate a nominal value under these circumstances. The county invites us to depart from *Woda Ivy Glen* for the purpose of achieving what it considers a more appropriate policy outcome. We decline this invitation and adhere to our precedent, leaving the policy considerations to the General Assembly.

12

**CONCLUSION**

{¶ 33} For the foregoing reasons, we find that the BTA acted reasonably and lawfully in adopting the Tepe appraisal, and we therefore affirm its decision. We also deny the county's motion to remand.

Decision affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, O'NEILL, and FISCHER, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by DEWINE, J.

_____

**O'DONNELL, J., dissenting.**

{¶ 34} Respectfully, I dissent.

{¶ 35} R.C. 5713.03 as applicable here required the auditor to determine the true value of the fee as if the property was unencumbered. The property construction costs in this case were approximately $1.5 million, and the auditor valued the 11-suite subsidized apartment building at $811,120. The error in the Board of Tax Appeals' conclusion valuing the property at $75,000 occurred because it relied on below market contract rents, not market value rents.

{¶ 36} Accordingly, I would reverse its determination and remand the matter to the Board of Tax Appeals.

DEWINE, J., concurs in the foregoing opinion.

_____

Vorys, Sater, Seymour & Pease, L.L.P., Karen H. Bauernschmidt, and Nicholas M.J. Ray, for appellee Notestine Manor, Inc.

Rich & Gillis Law Group, L.L.C., and Kelley A. Gorry, for appellants.

_____