**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* **Slip Opinion No. 2018-Ohio-3254.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3254

COLUMBUS CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; NETWORK RESTORATIONS I, L.L.C., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2018-Ohio-3254.]**

*Taxation—Real-property valuation—Valuation of government-subsidized residential properties—Board of Tax Appeals' decision vacated, and cause remanded.*

(No. 2016-0551—Submitted May 8, 2018—Decided August 15, 2018.)

APPEAL from the Board of Tax Appeals, No. 2014-4633.

_____

**Per Curiam.**

{¶ 1} This appeal challenges a decision of the Board of Tax Appeals ("BTA") and involves the question of how best to determine the true value of a low-income-housing property that is both rent restricted (i.e., the owner is restricted in the rent it can charge) and rent subsidized (i.e., some of the rent is paid by the

government).   Appellant, the property owner, Network Restorations I, L.L.C., maintains that rents as derived from rent-restricted comparables should be used in the analysis but that the property's rent subsidies should be excluded from consideration.   Appellee Columbus City Schools Board of Education ("BOE") takes the opposite view, claiming instead that the property's actual rents, which include tenant-paid rent and rent subsidies, should be used.

{¶ 2} As explained below, we are compelled to vacate the BTA's decision and remand the cause to the BTA because it failed to weigh and analyze a potentially material piece of evidence presented by Network Restorations.

**FACTS AND PROCEDURAL BACKGROUND**

{¶ 3} The subject property consists of 101 low-income-housing rental units encompassed within 24 parcels that are scattered throughout Columbus.   The parcels operate as one economic unit[1] and contain one- to three-bedroom apartments.  For tax year 2011, a sexennial reappraisal year in Franklin County, the Franklin County auditor valued the property at $4,417,500.  Network Restorations filed a complaint seeking a reduction in this valuation, and the BOE responded with a countercomplaint urging retention of the auditor's valuation.

*BOR proceedings*

{¶ 4} At the Franklin County Board of Revision ("BOR") hearing, Network Restorations presented an appraisal report and supporting testimony from Donald E. Miller II, a certified appraiser.  Miller explained that the subject property benefits from two types of government assistance.

---

[1] An "economic unit" is "[a] combination of parcels in which land and improvements are used for mutual economic benefit.  An economic unit may comprise properties that are neither contiguous nor owned by the same owner.  However, they must be managed and operated on a unitary basis and each parcel must make a positive economic contribution to the operation of the unit."  The Appraisal Institute, *The Dictionary of Real Estate Appraisal* 72-73 (6th Ed.2015); *see also Park Ridge Co. v. Franklin Cty. Bd. of Revision*, 29 Ohio St.3d 12, 504 N.E.2d 1116 (1987), paragraph two of the syllabus (it is permissible to value property according to an economic-unit theory).

**{¶ 5}** First, the property operates under the federal low-income-housing-tax-credit ("LIHTC") program. *See* 26 U.S.C. 42. "The LIHTC is a device for raising capital for low-income-housing projects that by themselves generate little (if any) profits—investors are attracted by federal income tax credits that are tied to the amount of capital invested in the housing projects." *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, ¶ 6. As Miller explained, the property is bound by a restrictive covenant in accordance with the LIHTC program. The restrictive covenant here provides that 21 percent of the units must be made affordable to persons with incomes at or below 35 percent of the median gross income in the area ("AMGI"), 23 percent of the units must be made affordable to persons with incomes at or below 40 percent AMGI, and 56 percent of the units must be made affordable to persons with incomes at or below 45 percent AMGI.

**{¶ 6}** Second, the property receives project-based subsidies through the Department of Housing and Urban Development's ("HUD's") Housing Assistance Program ("HAP").[2] The HAP contract specifying the precise subsidy levels is not in the record. But Miller's appraisal report states that over 90 percent of the property's rental revenue came from subsidies for 2009, 2010, and 2011.

**{¶ 7}** In developing his opinion of value, which was based on an income approach, Miller hypothesized that the property was being operated solely in accord with the LIHTC program—that is, he accounted for the presence of the LIHTC restrictions but excluded the effect of the rent subsidies. He further explained: "The value is developed looking to the LIHTC rental market to see what rents are for those units and considers LIHTC operating expense data to estimate reasonable

---

[2] Project-based subsidies and tenant-based vouchers are among the notable forms of government assistance. The former are assignable to units at the property itself whereas the latter "travel" with the tenant.

expenses were the property operating as a LIHTC property apart from the HUD/HAP program."

{¶ 8} Miller evaluated seven LIHTC rent comparables to generate a market-based effective gross income of $646,450. He then deducted operating expenses to arrive at a net operating income of $260,728. The data for the operating expenses draws from eight LIHTC properties and the subject property. After applying an overall capitalization rate of 11.15 percent and making deductions for personal property, Miller opined a rounded valuation of $2,310,000 as of the January 1, 2011 tax-lien date.

{¶ 9} The BOR determined that a reduced capitalization rate should apply, reasoning that an investor in this type of property would face "very little" risk and be assured of receiving an income. After reducing the capitalization rate, the BOR assigned a value of $2,448,200 for tax years 2011, 2012, and 2013.

*BTA proceedings*

{¶ 10} The BOE appealed to the BTA and furnished the testimony and appraisal report of Thomas D. Sprout, a certified appraiser. Like Miller, Sprout relied on an income approach to value the property. But unlike Miller, who relied on comparable data from other LIHTC properties, Sprout made his calculations in reliance on the subject property's actual income and expenses. And unlike Miller, who excluded the effect of the HUD subsidies, Sprout included them.

{¶ 11} Sprout estimated a net operating income of $465,000, to which he applied an overall capitalization rate of 10.75 percent. After deducting $60,000 to account for furniture, fixtures, and equipment, Sprout opined a valuation of $4,265,000 as of the January 1, 2011 tax-lien date.

{¶ 12} Miller appeared at the BTA hearing as well, and he again explained how he had arrived at the valuation stated in his appraisal report. Miller also provided four explanatory memorandums, one of which, Memorandum D, reflects his attempt to determine market rents of properties in similar locations that do not

4

participate in low-income-housing programs. In Miller's view, Memorandum D confirms that the LIHTC market rent he developed in his appraisal report is similar to conventional market rents.

**{¶ 13}** The BTA viewed the case largely through the principles articulated in *Alliance Towers, Ltd v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16, 523 N.E.2d 826 (1988) and *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984. Based on its understanding of those decisions, the BTA observed that rent subsidies can be taken into account to the extent they do not raise a property's value above that which would be found in the conventional market. Applying that understanding, the BTA favored Sprout's approach over Miller's: "In the absence of some evidence that the subject property is receiving rents above conventional market rents, * * * we find Sprout's analysis more accurately values the subject property as it existed on [the] tax lien date." BTA No. 2014-4633, 2016 WL 2907635, *4 (Mar. 17, 2016). The BTA thus assigned a value of $4,265,000 for tax years 2011, 2012, and 2013 but remanded the matter to the BOR because, in its view, some of the parcels were apparently subject to a tax-increment financing agreement that necessitated an allocation of value. Network Restorations then filed this appeal.

## STANDARD OF REVIEW

**{¶ 14}** We will affirm a BTA decision that is reasonable and lawful. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. We review de novo the BTA's resolution of legal issues but will defer to the BTA's findings concerning the weight of the evidence if there is record support for them. *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, 73 N.E.3d 486, ¶ 13.

## DISCUSSION

**{¶ 15}** Although Network Restorations presents ten propositions of law for our consideration, the core of each claim is that the BTA erred in adopting the

valuation opinion of Sprout, the BOE's appraiser, because he relied on the property's actual rents, which include both tenant-paid rent and rent subsidies. In Network Restorations' view, that method overstates the property's value because it fails to account for the LIHTC restrictions and impermissibly values the rent subsidies. Network Restorations asserts that when, as here, a property is subject to LIHTC restrictions but the owner receives rent subsidies, the proper analysis, as exemplified by Miller's approach, is to determine a LIHTC market rent that excludes the value of the rent subsidies. An amici curiae[3] brief filed in support of Network Restorations echoes this sentiment.

{¶ 16} In making its argument, Network Restorations relies mainly on *Alliance Towers*, 37 Ohio St.3d 16, 523 N.E.2d 826, and *Woda*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984. Those decisions are, to be sure, guideposts in our low-income-housing-valuation jurisprudence. But their meanings were addressed in a pair of more recent decisions that were decided after the submission of briefs in this case, namely, *Columbus City Schools Bd. of Edn.*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, and *Notestine Manor, Inc. v. Logan Cty. Bd. of Revision*, 152 Ohio St.3d 439, 2018-Ohio-2, 97 N.E.3d 446. Because *Columbus City Schools* and *Notestine Manor* best reflect our contemporary understanding of how to properly value low-income housing, we begin by reviewing the insights from those decisions.

{¶ 17} In *Columbus City Schools*, we discerned three general principles that bear on the valuation of low-income housing. First, "in applying the income approach, market rents and expenses, as opposed to the actual rents of the properties at issue, are used." *Id.* at ¶ 16. Second, in using "an income approach, government subsidies should not be taken into account in a way that would increase the value

---

[3] The amici are Ohio Capital Corporation for Housing, Ohio Housing Council, Coalition on Homelessness and Housing in Ohio, Ohio Community Development Corporation Association, Council for Rural Housing & Development of Ohio, Midwest Affordable Housing Management Association, Ohio Apartment Association, and Columbus Apartment Association.

of the property." *Id.* at ¶ 17. Third, a cost approach to valuation is disfavored. *Id.* at ¶ 18.

{¶ **18**} *Columbus City Schools* involved a property that, like the property at issue in this case, operated under LIHTC restrictions and received subsidized rents. *Id.* at ¶ 5-7. In that case, the board of revision adopted the value opined by the property owner's appraiser, who valued the property under the hypothetical assumption that the property received market rents. *Id.* at ¶ 1, 8. The BTA, however, apparently regarded this method as violating *Woda* and reversed the BOR's decision. *See Columbus City Schools* at ¶ 11. In *Woda*, we held that the valuation of a LIHTC property should account for LIHTC restrictions. *Id.* at ¶ 30. The BTA apparently understood *Woda*'s directive as requiring an actual-rent income approach rather than a market-rent income approach, *see Columbus City Schools* at ¶ 11, 19, but we reversed the BTA's decision and "clarif[ied] that *Woda* adheres to the rule for using a market-rent income approach when valuing government-subsidized residential properties," *Columbus City Schools* at ¶ 22. Given that the BTA committed legal error in rejecting the owner's appraisal, we concluded that it was permissible to restore the board of revision's decision as a proper finding of fact because the owner's appraisal formed the basis for that decision. *Id.* at ¶ 23.

{¶ **19**} *Notestine Manor* involved low-income housing operated in accord with a federal program that provided capital advances "to build rental housing for very low-income elderly individuals." *Id.* at ¶ 4 (detailing Section 202 of the Housing Act of 1959, codified at 12 U.S.C. 1701q). A principal point of contention in that case centered on how best to read *Alliance Towers* and *Woda* in light of *Columbus City Schools*. The board of education argued that *Columbus City Schools* required a market-rent rather than a contract-rent income approach. But we determined that this reading was too strict, explaining that "the preference for market rent over contract rent is presumptive, not conclusive." *Notestine Manor* at

¶ 22.  Harmonizing the case law, we instructed that "[t]he guiding principle from *Alliance Towers*, articulated in *Woda Ivy Glen*, and reiterated in *Columbus City Schools*, is that the valuation method must account for the 'affirmative value' of government subsidies, i.e., the tendency of government subsidies to inflate the value above what the market would otherwise bear." *Id.*  In light of these principles, we upheld the BTA's adoption of an appraisal predicated on actual restricted rents. There was no evidence that adjusting from contract rent to market rent would have eliminated the subsidies' affirmative value.  *Id.* at ¶ 23.  And the record did not establish that contract rents exceeded those in the general market or that the property benefited from additional tax incentives.  *Id.* at ¶ 24.[4]

{¶ 20} The BTA did not have the benefit of *Columbus City Schools* and *Notestine Manor* when it decided this case; however, those cases as well as *Woda* itself justify the BTA's statement that Miller's appraisal logic "appears to be sound," 2016 WL 2907635 at *4.  First, in developing a LIHTC market rent based on rents taken from comparable LIHTC properties, Miller heeded *Woda*'s directive to take the LIHTC restrictions into account.  Indeed, had Miller developed a market rent based on properties not subject to LIHTC restrictions, the LIHTC restrictions would not have been taken into account.  Second, Miller's evaluation of rents from the LIHTC market rather than the property's actual rents is consistent with the court's instructions in *Columbus City Schools*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, at ¶ 16, and *Notestine Manor*, 152 Ohio St.3d 439, 2018-Ohio-2, 97 N.E.3d 446, at ¶ 22, to consider market rents.  To be sure, the reference to market

---

[4] *Notestine Manor* also addressed the effect of amendments that 2012 Am.Sub.H.B. No. 487 ("H.B. 487") made to R.C. 5713.03, a statute governing the valuation of real estate.  *See Notestine Manor* at ¶ 25-29.  H.B. 487 took effect for tax year 2013, *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 18, and tax year 2013 is one of the years at issue here by virtue of the carryover of the value that was determined for tax year 2011.  Dispositive here is that no party contends that H.B. 487's amendments to R.C. 5713.03 apply in this case, and in any event, *Notestine Manor* held that those amendments did not override *Woda, see Notestine Manor* at ¶ 29.

rents in those decisions is best understood as describing rents that are both unrestricted and unsubsidized. But the logic of those decisions can be extended to permit consideration of an appropriate *subset* of market rents, here, the appropriate subset is rents from the LIHTC market. As Miller stated in Memorandum D, "[m]arket rent is derived from the market place a property competes within." Thus, in developing a market rent for a LIHTC property, Miller explained, it is permissible to look to rents from other LIHTC properties because these types of properties compete against each other.

{¶ 21} Turning to the issue whether the property's rent subsidies should be taken into account for real-property-valuation purposes, *Columbus City Schools* at ¶ 17 and *Notestine Manor* at ¶ 22 explain that the affirmative value of rent subsidies should be adjusted out to the extent that they raise rents above market rent. It is this principle that exposes a defect in the BTA's decision.

{¶ 22} Miller's Memorandum D purports to show that adding in the property's rent subsidies results in a rent elevated above market rent. Specifically, Miller computed $57,000 for a monthly LIHTC market rent and $55,787 for a monthly conventional market rent. In other words, Miller's computations show that a LIHTC market rent and a conventional market rent are essentially the same. Network Restorations then contrasted those figures with those asserted by the BOE, which used the property's actual rents—inclusive of rent subsidies—in computing to a monthly rent of $77,797. Based on these data points, Network Restorations asserts that adding in the rent subsidies under the BOE's approach inflates the property's value above market.

{¶ 23} But while the BTA admitted Memorandum D into the record, it never weighed the memorandum's probative value to determine whether it could be credited as showing that the subsidies inflated the rents above market rent. That was error. "[T]he BTA must review and weigh all competent evidence in the record in order to determine the property's true value." *Buckeye Terminals, L.L.C. v.*

*Franklin Cty. Bd. of Revision*, 152 Ohio St.3d 86, 2017-Ohio-7664, 93 N.E.3d 914, ¶ 22. And "the BTA must engage in sufficient discussion of the evidence to permit the court on appeal to determine whether the BTA acted reasonably and lawfully." *Lutheran Social Servs. of Cent. Ohio Village Hous., Inc. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 125, 2017-Ohio-900, 79 N.E.3d 541, ¶ 12. When the BTA fails to account for potentially material evidence, it is proper for us to vacate the decision and remand the cause. *Mann v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 197, 2017-Ohio-8820, 94 N.E.3d 529, ¶ 1, 16.

{¶ 24} The BTA's statement that there is an "absence of some evidence that the subject property is receiving rents above conventional market rents," 2016 WL 2907635 at *4, reinforces the need for vacatur and remand. As Network Restorations points out, the BTA never said what an appropriate market rent is in this case. And, more fundamentally, there is evidence in the record that, if credited as probative, tends to impugn the BTA's statement that the property is not receiving rents above the conventional market rate. Given the BTA's failure to discharge its duty as the finder of fact, we vacate its decision and remand the cause with the instruction that the BTA "explicitly account" for Memorandum D, *see Lutheran Social Servs.* at ¶ 13, along with the other evidence.

{¶ 25} The BOE argues that the property should not be valued in accord with Miller's analysis, because, the BOE insists, the record does not support the facts asserted in his analysis. First, the BOE maintains that Network Restorations failed to establish that the subject property was 100 percent rent restricted as of the tax-lien date, asserting that the LIHTC restrictive covenant applies to only 20 of the 24 parcels at issue. Second, the BOE claims that the contract establishing the subsidies is not in the record.

{¶ 26} As to the first point, when the BTA makes a finding adverse to the winning party and the opposing party files an appeal, it is essential that the winning party challenge the adverse finding through a cross-appeal if it wishes to invoke the

court's jurisdiction to consider the finding. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 100, 2017-Ohio-7578, 86 N.E.3d 301, ¶ 31-32. Here, the BTA described the property as consisting of 101 residential units scattered throughout 24 parcels. 2016 WL 2907635 at *1. The BTA then went on to describe the property within the parameters of the LIHTC restrictions, particularly the AMGI levels. *Id.* at *3. Not once did the BTA mention the possibility that some parcels may not have been subject to the LIHTC restrictions. Instead, the BTA viewed all 24 parcels as subject to the restrictions, and for good reason; no party raised the issue below. Indeed, the BOE's brief to the BTA described the subject property as consisting of 24 parcels that are " 'scattered site' residential properties operated as an economic unit by Network Restorations and encumbered with * * * Low Income Housing Tax Credits (LIHTC) * * * ." Considering this posture, the BOE's failure to file a cross-appeal on this point deprives us of jurisdiction to consider the issue.

{¶ 27} As for the second point, it is immaterial that the contract establishing the rent subsidies is not in the record. We have held that "an appraiser's certification permits a fact-finder to rely on facts asserted in an appraisal report— particularly when * * * those facts are undisputed." *Woda*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, at ¶ 15. Here, Miller's appraisal report breaks down the property's yearly revenue into the amounts received from tenant-paid rent and from subsidized rent. Thus, even though the contract is not in the record, the level of subsidy can be derived from the report. Moreover, at the BTA hearing, the BOE's appraiser did not controvert the level of subsidy received at the property.

## CONCLUSION

{¶ 28} For the foregoing reasons, we vacate the BTA's decision and remand the cause for further proceedings.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, and DEGENARO, JJ., concur.

O'DONNELL, J., concurs in part and dissents in part, and would vacate and remand as to tax years 2011 and 2012 and concurs in that part of Justice DeWine's opinion directing the BTA to independently value the property for tax year 2013.

DEWINE, J., concurs in part and dissents in part, with an opinion.

_____

**DEWINE, J., concurring in part and dissenting in part.**

{¶ 29} The Board of Tax Appeals' ("BTA's") decision in this case dealt with the valuation of the property for three different tax years. For two of the tax years—2011 and 2012, I concur in the majority's judgment vacating the BTA's decision and remanding the case for consideration of the property owner's evidence. But for tax year 2013, I would direct the BTA to independently value the property under the statute that was in place for that tax year.

{¶ 30} Prior to tax year 2013, a county auditor was required to determine "the true value" of the real estate. Former R.C. 5713.03, Am.Sub.H.B. No. 920, 136 Ohio Laws, Part II, 3182, 3247. Effective tax year 2013, the statute changed. For tax year 2013, the auditor was required to determine "the true value of the fee simple estate, as if unencumbered." 2012 Am.Sub.H.B. No. 487 ("H.B. 487"); *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 18 ("the H.B. 487 version [of R.C. 5713.03] applies to valuations for tax year 2013").

{¶ 31} I read the statute to mean exactly what it says: the effect of an encumbrance is not to be considered in valuing a piece of property. But unfortunately, a majority of this court recently held otherwise. In *Notestine Manor, Inc. v. Logan Cty. Bd. of Revision*, 152 Ohio St.3d 439, 2018-Ohio-2, 97 N.E.3d 446, we dealt with a tax appeal for tax year 2013 that concerned a property that had been financed through a federal program that provided capital for the development

of low-income rental housing for the elderly. *See* 12 U.S.C. 1701q. Under the program, the property was subject to restrictions and covenants in favor of the United States Department of Housing and Urban Development ("HUD") that, among other things, limited the amount of rent the owner could charge. These restrictions obviously constituted an encumbrance on the property—that is, a " 'right to, or interest in, land which may subsist in another to diminution of its value, but consistent with the passing of the fee,' " *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16, 22, 523 N.E.2d 826 (1988), fn. 5, quoting *Black's Law Dictionary* 473 (5th Ed.1979). So under the plain language of the statute, the property was required to be valued without consideration of the restrictions and covenants.

{¶ 32} But forget the plain language of the statute. The *Notestine* majority decided to ignore the legislative amendment to R.C. 5713.03 and value the property as encumbered. It noted that in a pre-H.B. 487 case involving the federal government's low-income-housing tax credits ("LIHTC") program, LIHTC use restrictions were taken into account in valuing the property. *Notestine* at ¶ 28, citing *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984. It then concluded that the H.B. 487 amendment was not meant to supersede our existing caselaw. *Notestine* at ¶ 29.

{¶ 33} In other words, in *Notestine*, a majority of this court said that our precedent controlled over the plain language of a subsequent legislative enactment. And further, it said that even in the face of a statute that plainly requires property to be valued as if unencumbered, the auditor is required to value the property as encumbered.

{¶ 34} For obvious reasons, I dissented in *Notestine*. And because it is impossible to reconcile *Notestine* with the plain language of the legislative scheme, I would not apply its holding in this case.

{¶ 35} So where does that leave us? For tax years 2011 and 2012, the matter is governed by the older version of the statute and our precedent interpreting that statutory provision. Based upon that version of the statute and our precedent, I concur in the majority's judgment vacating the BTA's decision and remanding the case for consideration of the property owner's evidence—specifically, whether that evidence demonstrates that the rent subsidies resulted in the owner's receiving above-market rents. I disagree, however, with the majority's conclusion that the relevant market is the market for LIHTC property. Plainly, rents received for LIHTC property cannot be considered "market rents," because the governmental restrictions on rents for such properties mean that the rents are not set by market forces. Instead, the proper measure is actual market rents. That distinction likely matters little here, however, because the property owner's appraiser, Donald Miller II, calculated LIHTC rents and conventional market rents to be essentially the same. On remand, the BTA should determine what, if any, weight to give to Miller's calculation of actual market rents.

{¶ 36} For tax year 2013, I would apply the statute in effect for that year. That means the property should be valued as if unencumbered. In the proceeding below, neither party set forth evidence of the property's value as if unencumbered. Miller's appraisal relied upon market rents *in the LIHTC market*. As the majority explains, LIHTC projects are encumbered by restrictive covenants that limit the amount of rent the owner may charge its tenants. Thus, Miller's appraisal values the property as encumbered. Because the statute requires that the property be valued as if unencumbered for tax year 2013, it would be improper for the BTA to rely upon the values set forth in Miller's appraisal.

{¶ 37} The Columbus City Schools Board of Education proposed the value put forth in Thomas Sprout's appraisal. But like Miller, Sprout did not purport to value the property as if unencumbered. Instead, Spout's appraisal relied upon actual rents received—rents that, of course, were subject to the LIHTC restrictions.

Thus, it was improper for the BTA to rely upon Sprout's appraisal in establishing the 2013-tax-year valuation.

**{¶ 38}** Because no party presented an appraisal that valued the property "as if unencumbered," I would direct the BTA on remand to independently value the property under the statute in place for tax year 2013. *See Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 147 Ohio St.3d 409, 2016-Ohio-7381, 66 N.E.3d 722, ¶ 21. I agree with the majority as to its remand instructions for tax years 2011 and 2012, subject to the caveat concerning the relevant market set forth above.

_____

Rich & Gillis Law Group, L.L.C., Mark Gillis, and Kimberly G. Allison, for appellee Columbus City Schools Board of Education.

Timothy A. Pirtle, for appellant.

Porter, Wright, Morris & Arthur, L.L.P., and Mark A. Snider, Abbigail L. Brothers, and L. Bradfield Hughes, urging reversal for amici curiae, Ohio Capital Corporation for Housing, Ohio Housing Council, Coalition on Homelessness and Housing in Ohio, Ohio Community Development Corporation Association, Council for Rural Housing & Development of Ohio, Midwest Affordable Housing Management Association, Ohio Apartment Association, and Columbus Apartment Association.

_____