[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-2734.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-2734

COLUMBUS CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v*. FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; NETWORK RESTORATIONS III, L.L.C., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-2734.]

*Taxation—Real-property  valuation—Valuation  of  government-subsidized residential properties—Board of Tax Appeals' decision reversed.*

(No. 2014-0807—Submitted February 28, 2017—Decided May 11, 2017.)

APPEAL from the Board of Tax Appeals, No. 2011-714.

————————————

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns several residential parcels, all part of a government-subsidized low-income-housing project in Franklin County, and their value for 2008, 2009, and 2010.  The property owner, Network Restorations III, L.L.C., presented an appraisal that was adopted by the

Franklin County Board of Revision ("BOR"), but the Columbus City Schools Board of Education ("BOE") appealed to the Board of Tax Appeals ("BTA"), which reversed and reinstated the county auditor's higher valuations.

{¶ 2} On appeal, the property owner asserts that its appraiser followed the proper principles applicable when valuing government-subsidized housing and that the BTA misinterpreted the applicable case law. The proper legal analysis for the type of property at issue in this case is set forth in *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984. Because we find that the BTA's rejection of the owner's appraisal rests upon an erroneous interpretation of *Woda*, we reverse the decision of the BTA.

## BACKGROUND

{¶ 3} At issue are 42 parcels scattered throughout Franklin County, some of which have been improved with renovated low-income housing. There are 35 buildings with 150 rental units—a mix of one-bedroom, two-bedroom, and three-bedroom units. For tax year 2008, which was a triennial update year in Franklin County, the county auditor valued the properties individually, combining a cost approach and a "gross rent multiplier" approach to arrive at a value for each parcel, which when combined amounted to $4,456,910.[1] For tax year 2009, the auditor increased the values because some of the properties had been renovated; the aggregate valuation for 2009 was $5,490,700, which was carried over to tax year 2010.

---

[1] Although the BTA stated that it was reinstating the auditor's values, there is a discrepancy between the aggregate value determined by the auditor for 2008—$4,456,910 per the BTA decision—and the sum of the values assigned to the properties by the BTA itself, which was $4,431,500. The BTA decision does not explain the discrepancy. Additionally, the parties that filed briefs in this case assert that the aggregate value under the auditor's assessment was $4,456,500 (Columbus City Schools Board of Education) or $4,456,514 (Network Restorations). In this opinion, we rely on the BTA's finding of $4,456,910.

**{¶ 4}** After filing a complaint that sought a reduced aggregate value of $3,600,000, the owner presented lay testimony and an expert opinion of value at the BOR hearing. The testimony established that to participate in the "low-income-housing tax credit" program, the owner was required to and did execute and record a restrictive covenant. The covenant bound the current owner and its successors to continue to use the property to provide low-income housing on very specific terms over a 30-year period.

**{¶ 5}** The owner's expert witness was Donald E. Miller II, a member of the Appraisal Institute, who testified in support of his appraisal report before the BOR. Placing primary reliance on an income approach, which he checked using a sales-comparison approach, Miller opined that the aggregate property value was $2,830,000 for 2008. Miller specifically discussed the low-income-housing tax credit and the rent subsidies enjoyed by the properties at issue, which made it possible to renovate the units and to rent the units to low-income persons who could not afford market rents. He then premised his report on those circumstances.

**{¶ 6}** Miller identified two types of subsidy. The first was acquisition and renovation assistance through the federal low-income-housing tax credit ("LIHTC"), which was enacted in 1986 and codified at 26 U.S.C. 42. The LIHTC is a device for raising capital for low-income-housing projects that by themselves generate little (if any) profits—investors are attracted by federal income tax credits that are tied to the amount of capital invested in the housing projects. *Woda*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, at ¶ 16-17.

**{¶ 7}** The second form of subsidy was housing-assistance payments ("HAP"), which were available to tenants through Section 8 of the Housing Act of 1937, as amended. 42 U.S.C. 1437f. We have addressed this subsidy before in the context of real-property-valuation cases. *See Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16, 20, 523 N.E.2d 826 (1988), fn. 4 (lead

opinion); *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 20.

{¶ 8} Miller's opinion of value rested on his finding of highest and best use. Noting the blight in the neighborhoods in which the parcels at issue are located, Miller found that the highest and best use would be "intensive residential if special funding is made available." Under the income approach, Miller noted that the properties at issue operate as LIHTC properties and that the owner receives HAP-subsidized rents, as the residents are unable to afford the LIHTC rents. Miller stated that "[g]iven the subsidized rents and the reality that this appraisal may be used in a real estate assessment (tax) appeal, the subject is being appraised under the hypothetical assumption that it receives market rents."

{¶ 9} For 2008, the BOR adopted the $2,830,000 value in accordance with the appraiser's opinion, but in light of the renovations completed during 2008, it raised the aggregate value for 2009 and 2010 to $3,867,300. The increase reflected the "contributing value" of the renovations and was based on the auditor's determination of increase in value from 2008 to 2009.

{¶ 10} On appeal to the BTA, the BOE presented evidence showing that the owner had spent $13.7 million renovating the properties.

{¶ 11} The BTA reversed the BOR, restoring the auditor's higher aggregate value. With respect to tax year 2008, the BTA looked to *Woda*'s twin principles that LIHTC use restrictions " 'must be taken into account when determining the value of LIHTC property' " and that government-subsidized low-income housing should be valued " 'in accordance with methods that disregarded the affirmative value of the subsidies conferred by the federal government.' " BTA No. 2011-714, 2014 Ohio Tax LEXIS 2505, at *4 (Apr. 21, 2014), quoting *Woda*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, at ¶ 30, 28. The BTA found that those principles were "directly contrary to the approach taken by Mr. Miller," based on its theory that using market rents involves ignoring the

restrictive covenants. *Id.* The BTA also restored the auditor's increased valuation for 2009 and 2010.

## ANALYSIS

### Standard of Review

{¶ 12} Ordinarily, the determination of value is "a question of fact, the determination of which is primarily within the province of the taxing authorities." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. Therefore, "this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Id.*

{¶ 13} In this appeal, however, we review the BTA's determination that Miller did not appraise the property in compliance with the legal standards set forth in earlier cases. This is a legal issue, and thus, our de novo review is invoked. *See Lunn v. Lorain Cty. Bd. of Review*, __ Ohio St.3d __, 2016-Ohio-8075, __ N.E.3d __, ¶ 13.

### Tax Valuation of Low-Income Housing

{¶ 14} R.C. 5713.01 requires county auditors to appraise real property "at its true value in money," which we have construed to equate in most situations with the amount for which the property would sell on the open market. *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964). We have further explained that "market value" means the price arrived at when the buyer and the seller act as "typically motivated market participants" who are acting "in their own self-interest." *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 1, 2014-Ohio-853, 9 N.E.3d 920, ¶ 31, citing International Association of Assessing Officers, *Property Assessment Valuation* 17-19 (2d Ed.1996). Accordingly, when considering whether a sale price paid for the subject property constitutes its true value, we have acknowledged that "the typical motivation of the seller and the buyer

constitutes an element in determining whether a transaction constitutes an arm's-length sale." *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 9, fn. 4.

{¶ 15} Determining the value of government-subsidized low-income housing presents the tax assessor with a problem in the application of the typically-motived-party principle. For one thing, when government subsidies (including income tax credits, which help finance construction and renovation, and rent subsidies, which help tenants pay the restricted rent) are involved, the circumstances attending the use of the property are not typical of the real-estate market generally. Additionally, a question arises as to which benefits associated with owning the real estate and running the housing complex count as real-estate value.

{¶ 16} Broadly speaking, the case law resolves this problem by establishing three rules for valuing low-income housing. The first rule is that in applying the income approach, market rents and expenses, as opposed to the actual rents of the properties at issue, are used. *Delhi Estates, Ltd. v. Hamilton Cty. Bd. of Revision*, 68 Ohio St.3d 192, 194, 625 N.E.2d 594 (1994). The main reasons for this rule are that the rents actually generated by the property reflect government subsidies that are atypical of the rental market generally and, because of government mortgage guarantees, the expenses incurred are atypical of what the unsubsidized market would bear. Quite simply, the rule of *Delhi Estates* calls for removing those aspects of property value that are atypical of the market due to government subsidies; the method for doing so is to derive rents and expenses from the market.

{¶ 17} The second rule is a corollary to the first. The case law establishes that in valuing low-income housing using an income approach, government subsidies should not be taken into account in a way that would increase the value of the property. We have referred to the value of government subsidies as "the

affirmative value" and have stated that the affirmative value should be adjusted out of the property valuation. *Woda*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 28-29, fn. 3 and 4, and cases cited therein.

{¶ 18} Finally, the case law disfavors a cost approach for valuing government-subsidized low-income housing, even for a newly constructed property. The reason is that "[w]ithout a federal loan guarantee, favorable mortgage terms, rent subsidy, and income tax advantages, the cost of construction for such housing would be prohibitively expensive." *Canton Towers, Ltd. v. Stark Cty. Bd. of Revision*, 3 Ohio St.3d 4, 7, 444 N.E.2d 1027 (1983); *see also Colonial Village*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 20, and cases cited therein. In other words, without the subsidies, ordinary market participants would not have incurred the construction costs in the first place, so using the cost approach overvalues the property.

### *Woda* Does Not Require an Actual-Rent Income Approach

{¶ 19} The BTA's decision in this case appears to regard our decision in *Woda* as a departure from earlier case law, and in its brief, the BOE points out that the BTA has consistently interpreted *Woda* as requiring an actual-rent income approach rather than a market-rent income approach in appraising LIHTC property. To the extent that the BTA has interpreted *Woda* in that manner and applied that interpretation here, the BTA is mistaken.

{¶ 20} One crucial element in determining the value of real estate is finding its "highest and best use," which is defined as " 'that use which will generate the highest net return to the property owner over a reasonable period of time.' " *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, ¶ 34, quoting *Property Assessment Valuation* at 31. Like the present case, *Woda* involved several homes under common ownership as a low-income-housing development. The appraiser valued the properties using an income approach that looked to the overall market for rent

and expenses. *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, BTA No. 2005-A-749, 2008 WL 205097 at \*3 (Jan. 11, 2008), *vacated and remanded*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984. When it came to determining the highest and best use of the properties, the owner's appraiser in *Woda* determined that the highest and best use of the property, as improved, was as the current " 'affordable rental housing development, laid out like a detached single-family subdivision.' " *Id.* at \*2. The BTA found error in that determination, stating that "the subject property was constructed as individual, single-family units." *Id.* at \*4. The BTA then questioned why the highest and best use should be as a single economic unit for rentals "rather than for sale as individual units" and asked whether "it would not be more profitable to consider the subject units individually, for fee simple ownership, rather than maintaining the units in a rental mode." *Id.* at \*4.

{¶ 21} On appeal, we reversed that linchpin of the BTA's decision, holding that the restriction to low-income-housing use had to be taken into account. *Woda*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 23-25, 31. But contrary to the BTA's interpretation, our holding in *Woda* involved no departure from earlier case law.

{¶ 22} To be sure, in *Woda*, we did not order that the market-rent appraisal presented in that case be adopted; we even suggested that the owner's appraisal in that case might not have been adequate. *Woda* at ¶ 31. But the BOE is drawing an unwarranted inference; in *Woda* we confronted an appraisal that had not been adopted by either the BOR or the BTA in determining the property value. Our order did not require the adoption of an appraisal that had not been vetted by the taxing authorities. *See EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9 ("When it reviews appraisals, the BTA is vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come

before it"). Instead, we remanded the cause to the BTA for it to consider the appraisal evidence and to reach the proper conclusion as to value as the finder of fact. To the extent that our decision in *Woda* has proved confusing in this regard, today we clarify that *Woda* adheres to the rule for using a market-rent income approach when valuing government-subsidized residential properties.

{¶ 23} Unlike the situation in *Woda*, in this case, the BOR adopted the owner's appraisal, which the BTA rejected on erroneous legal grounds. Because the appraisal formed the basis for the BOR's reduced valuation, we have no compunction in restoring that decision as a proper finding of fact.

{¶ 24} This approach is also dictated by the *Bedford* rule. *See Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913. Under that rule, " 'when the board of revision has reduced the value of the property based on the owner's evidence, that value has been held to eclipse the auditor's original valuation,' and the board of education as the appellant before the BTA may not rely on the latter as a default valuation." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 147 Ohio St.3d 38, 2016-Ohio-3025, 59 N.E.3d 1270, ¶ 6, quoting *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 35. Quite simply, the *Bedford* rule establishes that the BOR's reduced valuation was the default valuation before the BTA, and we are therefore justified in reinstating it after correcting the BTA's erroneous legal conclusions.

**The Increase Ordered by the BOR for 2009 and 2010 Was Proper**

{¶ 25} The BOE also argues that the BTA properly set aside the BOR's increased valuation for 2009 and 2010 and restored the auditor's valuation. We reject that contention. Although the auditor and the BOR increased the aggregate value by a similar amount for 2009 and 2010 based on the completed renovation of the units, the auditor added the increase to the higher aggregate value he had determined for 2008. Thus, according to the BTA, the auditor set the 2008 value

at $4,456,910; thereafter, the auditor added $1,033,790, to arrive at a value for 2009 and 2010 of $5,490,700, while the BOR set the 2008 value at $2,830,000 and added $1,037,300 to arrive at a value for 2009 and 2010 of $3,867,300.

{¶ 26} Contrary to the BOE's argument, we find that *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 35, is inapposite here. In *Sapina*, the BTA properly rejected a BOR finding that it could not replicate. Unlike the record in *Sapina*, the record here does permit the BTA to replicate the BOR's value for 2009 and 2010: the BOR arrived at those values by adding to its 2008 valuation substantially the same amount that the auditor had added to his 2008 valuation to account for the value increase attributable to the renovations; the BOR added $1,037,300, as opposed to the $1,033,790 increase ordered by the auditor. We find that this difference is de minimis.

{¶ 27} Additional support for restoring the BOR's increase for 2009 and 2010 lies in the *Bedford* rule. As previously discussed, the BOR's 2009 and 2010 valuation was the default valuation at the BTA. We therefore reverse the BTA decision as to its 2009 and 2010 valuations, and we reinstate the BOR's valuation for those years.

## CONCLUSION

{¶ 28} For the foregoing reasons, we reverse the decision of the BTA and reinstate the BOR's values.

Decision reversed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Kimberly G. Allison, for appellee Columbus City Schools Board of Education.

Timothy A. Pirtle, for appellant.

10

January Term, 2017

_____