[Cite as *OTR Hous. Assocs., LTD. v. Cincinnati School Dist. Bd. of Edn.*, 2021-Ohio-3231.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

OTR HOUSING ASSOCIATES, LTD.,   :      APPEAL NO. C-200321
                                             TRIAL NO. A-1804543

  and                                   :

WESTERN & SOUTHERN LIFE       :              *O P I N I O N.*
INSURANCE COMPANY,

                                          :

    Appellants-Cross-Appellees-
    Appellants,                            :

  vs.                                      :

CINCINNATI SCHOOL DISTRICT      :
BOARD OF EDUCATION,

                                          :

    Appellee-Cross-Appellant-
    Appellee,                            :

  and                                   :

BOARD OF REVISION OF           :
HAMILTON COUNTY, OHIO,

                                          :

  and                                   :

DUSTY RHODES, AUDITOR,         :
HAMILTON COUNTY, OHIO,

    Appellees.                          :

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Final Judgment Entered

Date of Judgment Entry on Appeal: September 17, 2021

*Barrett & Weber, LPA, C. Francis Barrett* and *Joshua L. Goode*, for Appellants,

*David C. DiMuzio, Inc., David C. DiMuzio,* and *Matthew C. DiMuzio,* for Appellee Cincinnati School District Board of Education.

**WINKLER, Judge.**

{¶1}    This case involves the tax valuation of government subsidized low-income housing property.  The trial court reversed the decision of the Hamilton County Board of Revision ("BOR") that granted a substantial reduction from the Hamilton County auditor's initial valuation of the property, and then reinstated the auditor's higher valuation as a default valuation.  Appellant property owners OTR Housing Associates, Ltd., ("OTR Housing") and Western & Southern Life Insurance Company ("Western & Southern") argue the trial court misapplied the law when rendering its judgment.  Appellee Cincinnati School District Board of Education ("school board") argues for an affirmance.

{¶2}    We reverse the trial court's judgment because we find the trial court misapplied the law when rendering its decision by rejecting the property owners' competent and persuasive appraisal evidence and by reinstating the auditor's initial valuation as the default valuation.  Further, we restore the BOR's reduced valuation, as requested by the property owners, noting the auditor never defended its initial valuation and instead concurred with the BOR's reduced valuation.

Background Facts and Procedure

{¶3}    The subject property consists of 20 parcels of land improved as Brackett Village, a multifamily housing complex in the Over-the-Rhine area of Cincinnati.  OTR Housing owns 19 parcels and Western & Southern owns one parcel.  These property owners began developing the property in the early 1990s with low-income housing tax credits ("LIHTC") in response to the city's request for quality low-income housing in a neighborhood that had been long neglected.  The property is now adjacent to some conventional market housing, with more on the way.

{¶4}     All 105 units at Brackett Village are restricted to a low-income-housing use based on covenants signed by the property owners and the Ohio Housing Finance Agency ("OHFA") relating to the property owners' participation in the LIHTC program.

{¶5}     Brackett Village participates in a Section 8 tenant assistance program that provides rent subsidies, but the property owners are limited in the amount of rent that may be collected from any source.  Moreover, the management of Brackett Village must strictly comply with regulations and pass inspections by OHFA and Cincinnati Metropolitan Housing Authority ("CMHA").  This involves a rigorous tenant screening process and ongoing efforts to ensure that tenants' housekeeping habits meet the standards for quality housing.

{¶6}     Unlike most multifamily housing properties, the units at Brackett Village are not standardized.  Tenants are offered 19 different floor plans. Additionally, the units are located in multiple buildings dating from 1847-1993, with the older ones renovated in different phases.

{¶7}     The Hamilton County auditor valued the property at $4,027,370 for the tax lien date of January 1, 2017, resulting in a tax liability of $131,769, a substantial increase from the prior year.  The property owners filed complaints with the BOR requesting an aggregate reduction to $1,275,000.  The school board filed a countercomplaint related to OTR Housing's parcels.  The BOR consolidated the complaints because they addressed the same economic unit.

{¶8}     At the BOR hearing, the property owners presented the testimony of Sandra Smith, the on-site property manager, Dan Baranowski, a representative of the property owners, and an appraisal report and testimony from state-certified appraiser Eric Gardner, MAI.  Through this evidence, the property owners

demonstrated that the property's use is restricted to 100 percent low-income housing through at least 2023 and that Brackett Village has significant necessary expenses. Further, Gardner opined after his complete appraisal that the fair market value as of the tax lien date was $1,060,000.

{¶9} Gardner came to his opinion of value using the income- and sales-comparison approaches, adopting the higher income-approach valuation. To estimate the subject property's market value in the income approach, he used a direct capitalization method, deriving a value by dividing a stabilized typical year's net operating income by an overall capitalization rate. His 98-page report contains market data on rental rates and operating expenses as well as actual rental rates and operating expenses.

{¶10} Gardner explained that the actual rent and the market rent were very similar, and he considered this when formulating a net income figure that was based on a three-year average of actual income. Gardner also explained that he had to use average actual expenses instead of lower market expenses because the failure to do so would result in overvaluing of the property in the eyes of a typical buyer of investment property. In his professional opinion, the restriction on the use of the property, the restrictions on the amount of rent collected, and the physical attributes of the property coupled with regulation compliance would negatively affect the value of the property in the eyes of a willing buyer. Gardner confirmed this opinion during cross-examination by the school board's attorney.

{¶11} The Hamilton County auditor's real estate department did not submit a report, but a staff appraiser from the auditor's office attended the hearing. Satisfied with the vetting of Gardner's appraisal, he told the BOR that there was no "escaping from the [low-income housing] restriction on the use of the property," and

that "trying to stay compliant with the Feds and trying to stay compliant with the state regulators has always been an expensive process." Moreover, the staff appraiser indicated the property was "difficult" to appraise because of its size and restriction, "comp[arable]s" were not ignored, and that "the income approach is what would drive anyone to it * * * because it's a big investment property and there's no income there because of the restrictions."

{¶12} Citing the fact that the "fee simple is encumbered by governmental restrictions," the BOR by a two-to-one vote granted the substantial reduction to $1,275,000, the amount requested in the property owners' complaints but about $200,000 higher than Gardner's opinion of value. The Hamilton County auditor's and Board of County Commissioners' representatives voted for the reduction, and the Hamilton County treasurer's representative dissented.

{¶13} The property owners appealed to the Hamilton County Court of Common Pleas seeking a further reduction. The school board also appealed and sought a valuation of $3,191,285. The parties were permitted to submit additional evidence at a hearing before a magistrate.

{¶14} The property owners presented the same witnesses and evidence presented at the hearing before the BOR, including Gardner's report and testimony in support of a value of $1,060,000. Gardner reiterated the reasons for using an expense figure in the income-approach method that was reflective of actual expenses but significantly higher than the typical expenses of market comparables. And he testified that substituting the market expense figure for the one he used in his final analysis of value would be "extremely misleading" based on his review of the property.

{¶15} In addition, the property owners presented the testimony and appraisal report of state-certified appraiser Jerry C. Fletcher, MAI. He valued the property under the income approach at $1,000,000 using the property's actual rents and expenses, deeming them appropriate after a market analysis.

{¶16} No representative of the BOR appeared in court. The auditor did not participate in any way. The school board introduced appraisal-review testimony from state-certified appraiser James Burt, MAI, who prepared an appraisal review critiquing Gardner's appraisal. Burt did not present an appraisal and did not give his opinion on the value of the property.

{¶17} Burt faulted Gardner for using actual expenses in his income-approach valuation, indicating that the supporting data was not convincing. After Burt testified, the property owners recalled Gardner, who again indicated that market considerations justified the use of actual expenses in light of the uniqueness of the property.

{¶18} At the end of the hearing, the school board took the position that the owners' evidence of valuation from the income approach could not be considered based on Ohio Supreme Court precedent. According to the school board, the court required the use of market rents and expenses in all cases when valuing government-subsidized housing using an income approach, precluding the use of actual rents and expenses. Conceding that Gardner's income-approach methodology was sufficient with respect to using market rents, which were similar to actual rents collected, the school board asserted that the valuation was deficient because Gardner used actual expenses. After adjusting Gardner's calculation by replacing actual expenses with the lower market expenses Gardner had identified in his report, the school board argued for a valuation of $3,191,285.

{¶19} The magistrate adopted the school board's argument in part, finding that the property owners' appraisers failed to use "the methodology" required by the Supreme Court when using the income approach for valuing government subsidized property. Thus, the magistrate did not consider that evidence to determine the valuation and found the property owners' other evidence unpersuasive. The magistrate further found that the value as proposed by the school board was not supported by reliable evidence. In doing so, the magistrate specifically credited Gardner's testimony at the hearing that "cherry picking" one item out of his report and recalculating was extremely misleading.

{¶20} Ultimately, the magistrate found neither the property owners nor the school board presented evidence in court to support the requested valuations. Next, the magistrate applied a *Bedford*-rule analysis, based on *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, to establish the default valuation to adopt. After concluding that the property owners' evidence before the BOR was not sufficient to support the reduction, the magistrate reinstated the auditor's valuation instead of the BOR's valuation.

{¶21} The property owners filed objections to the magistrate's decision. Following its review, the trial court adopted the magistrate's decision. The property owners then moved for a new trial under Civ.R. 59(A)(1), (6) and (7), but filed a notice of appeal before the trial court ruled on that motion. After a limited remand by this court, the trial court denied the Civ.R. 59 motion.

{¶22} On appeal, the property owners present three assignments of error. They contend the trial court erred by (1) completely rejecting the income-method-valuation evidence from their certified appraisers on the ground that the appraisers failed to use the methodology required by the Ohio Supreme Court, (2) reinstating

the auditor's valuation as a default valuation instead of adopting the BOR's valuation, and (3) denying their new-trial motion.

### Standard of Review

**{¶23}** Initially, we note Ohio law provides two forums for an administrative appeal of a BOR decision on valuation—the Board of Tax Appeals, *see* R.C. 5717.01, and the court of common pleas, *see* R.C. 5717.05. Only a property owner may initiate appellate proceedings in the court of common pleas. *Id.*

**{¶24}** Both the Board of Tax Appeals and the court of common pleas provide the same function when reviewing a BOR decision—to determine the taxable value of the property without deference to the administrative finding. *See Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 15-16, 665 N.E.2d 1098 (1996), citing *Black v. Cuyahoga Cty. Bd. of Revision*, 16 Ohio St.3d 11, 475 N.E.2d 1264 (1985). That function is governed by the same case law. *See, e.g.*, *id.*; *Park Ridge Co. v. Franklin Cty. Bd. of Revision*, 29 Ohio St.3d 12, 504 N.E.2d 1116 (1987); *Othman v. Bd. of Edn. of Princeton City School Dist.*, 1st Dist. Hamilton Nos. C-160878 and C-170187, 2017-Ohio-9115, ¶ 20-22; *Murray & Co. Marina, Inc. v. Erie Cty. Bd. of Revision*, 123 Ohio App.3d 166, 172, 703 N.E.2d 846 (6th Dist.1997).

**{¶25}** In an appeal of a BOR tax decision, we will not disturb the factual issue of valuation absent an abuse of discretion, but we review legal issues under a de novo standard. *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, Slip Opinion No. 2021-Ohio-2798, ¶ 10-11; *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, ¶ 12 ("*Columbus City Schools*"); *Othman* at ¶ 19.

Prevention of Overvaluation—Not an Issue Here

**{¶26}** In their first assignment of error, the property owners argue the trial court misapplied the law when evaluating the methodology used by their appraisers under the income approach. The school board maintains that an inflexible Supreme Court rule requires the use of market rents and expenses, and not actual rents and expenses, when valuing government subsidized housing for tax purposes under the income approach. This is a legal issue we review de novo. *Columbus City Schools* at ¶ 13 (whether property was appraised in compliance with legal standards is a legal issue invoking de novo review on appeal).

**{¶27}** The valuation of real property begins with the county auditors, who are required to appraise real property "at its true value in money." R.C. 5713.01(B). The Ohio Supreme Court has construed this "to equate in most situations with the amount for which the property would sell on the open market*." Columbus City Schools* at ¶ 14. This valuation centers on sellers and buyers acting as " 'typically motivated market participants' who are acting 'in their own self interest.' " *Id.* at ¶ 14, quoting *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 1, 2014-Ohio-853, 9 N.E.3d 920, ¶ 31.

**{¶28}** However, the valuation of government subsidized low-income housing "presents the tax assessor with a problem in the application of the typically-motivated-party principle." *Columbus City Schools* at ¶ 15*.* To address this, in addition to general appraisal principles concerning market conditions, the assessor of property in Ohio for tax purposes must take into consideration certain legal principles developed in case law. *See, e.g., id.* at ¶ 16-18; *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984 (holding that the highest and best use of real estate should be

determined by taking into account the significant tenant and rent restrictions recorded in the chain of title as prerequisites for the LIHTC).

**{¶29}** The Supreme Court discussed these principles in *Columbus City Schools*. Most relevant here, the court stated "that in applying the income approach, market rents and expenses, as opposed to the actual rents of the properties at issue, are used*." Columbus City Schools*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, at ¶ 16. The court explained "[t]he main reasons for this rule are that the rents actually generated by the property reflect government subsidies that are atypical of the rental market generally and, because of government mortgage guarantees, the expenses incurred are atypical of what the unsubsidized market would bear." *Id.* at ¶ 16. The court then tied that "rule" to the principle that "government subsidies should not be taken into account in a way that would increase the value of the property." *Id.* at ¶ 17.

**{¶30}** After *Columbus City Schools*, the court unequivocally clarified that the "rule" does not preclude the use of actual rents in all cases; the income-approach valuation method must account for the "affirmative value" of government subsidies. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 146, 2018-Ohio-3254, 112 N.E.3d 864, ¶ 21; *Notestine Manor, Inc. v. Logan Cty. Bd. of Revision*, 152 Ohio St.3d 439, 2018-Ohio-2, 97 N.E.3d 446, ¶ 22.

**{¶31}** Thus, when rent subsidies inflate rents above market rent, market rent should be used to remove the affirmative value of those government subsidies. *See Notestine Manor* at ¶ 22. An actual-rent approach is not precluded where those actual rents do not exceed those generally available in the market. *See id.* at ¶ 23.

**{¶32}** The Supreme Court's recent discussion of the issue focuses on rents, not expenses. Yet this precedent imbues the sentiment that the rule is simply to

protect the low-income-housing-property owner from overvaluation due to subsidies affecting rents or expenses. We apply it, therefore, to both rents and expenses.

{¶33} Here, there was no evidence of overvaluing due to the affirmative value of government subsidies affecting rents or expenses. As the school board conceded below, the actual rent was similar to market rate rent, not greater than it. Gardner considered this when formulating a net income figure that was based on a three-year average of actual rent.

{¶34} The actual expenses were higher than market comparables, but they were tied to maintaining quality low-income housing in a unique and challenging setting. Gardner explained that he had to use actual expenses instead of lower comparable market expenses because the failure to do so would result in *overvaluing* the property in the eyes of a typical buyer of investment property. Yet the trial court rejected the owners' valuation of the property under the income approach, including Gardner's appraisal evidence, on the ground that it violated the Supreme Court "rule" concerning the use of actual rents and expenses. This was error. For this reason, we sustain the first assignment of error.

BOR'S Valuation was the Default Valuation Before the Trial Court

{¶35} In the second assignment of error, the property owners argue the trial court erred by adopting the initial valuation of the auditor as a default valuation. In response, the school board maintains that reverting to the auditor's value was a proper remedy implemented by the trial court because the BOR relied on an appraisal report that violated Ohio Supreme Court precedent.

{¶36} Initially, the parties dispute whether under the *Bedford* rule the auditor's initial valuation was the default valuation before the trial court. This is a legal issue that invokes our de novo review.

{¶37} Generally, under the *Bedford* rule, when the BOR has reduced the value of property based on the owner's appraisal evidence that is both "competent and at least minimally plausible," the school board as an appellant in an appeal of the BOR decision may not rely on the auditor's original valuation as a default valuation. *See Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 147 Ohio St.3d 38, 2016-Ohio-3025, 59 N.E.3d 1270, ¶ 7-11, citing *Bedford*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913. Instead, the school board "must adduce affirmative evidence against the [BOR's] reduced valuation and in favor of the original valuation or some other value." *Id.* at ¶ 10. If the school board fails to meet its burden, the BOR's decision is the default valuation, and the trial court or BTA must impose it when disposing of the school board's appeal. *See id.* at ¶ 2.

{¶38} The course of proceedings at the BOR level determines whether the school board bore the burden in the trial court. *See Huber Hts. Cty. Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 154 Ohio St.3d 332, 2018-Ohio-4284, 114 N.E.3d 183, ¶ 14. In this case, the appraisal evidence that formed the basis of the BOR's reduction was competent and exceeded the minimally-persuasive standard. As previously discussed, Gardner's income approach to valuation did not violate Supreme Court precedent. Further, the school board did not challenge the accuracy of his calculations, and Gardner identified his supporting data and tied his details to market-driven assumptions. Finally, the staff auditor at the BOR hearing voiced only his agreement with Gardner's appraisal and no areas of disagreement.

{¶39} Based on this review, we conclude the property owners' competent and plausible evidence of value eclipsed the auditor's value, and the BOR's reduced valuation became the new default valuation of the property. Thus, the school board in its appeal of the BOR's decision carried the burden of adducing evidence against

the BOR'S reduced valuation and in support of the auditor's initial valuation or some other value.

{¶40} This case does contain the anomaly that the property owners were also appellants in the trial court and did not prevail on their request for a further reduction. But those facts do not take away the conclusion that the property owners' evidence before the BOR negated the auditor's value, shifting the burden to the school board to prove a new value.

{¶41} The trial court's rejection of Gardner's appraisal on erroneous legal grounds permeated its *Bedford*-rule analysis. That *Bedford*-rule analysis led the trial court to reinstate the auditor's initial valuation even though it found the school board failed to prove a new value. Thus, the trial court's reinstatement of the auditor's valuation as the default valuation in this case was also erroneous.

{¶42} Accordingly, we sustain the second assignment of error, because the trial court erred by reversing the BOR's decision and reinstating the auditor's initial valuation as the default valuation.

### Remedy

{¶43} As a remedy, the property owners do not seek a remand for the trial court to consider the appraiser evidence that was rejected on erroneous legal grounds. Instead, the property owners request that this court adopt a reduced valuation, including the BOR's reduced valuation, as a finding of fact.

{¶44} We consider the reinstatement of the BOR's reduced valuation as an appropriate approach, given that the *Bedford* rule establishes the BOR's reduced valuation was the default valuation before the trial court. The Supreme Court has adopted this approach in similar circumstances. *See Columbus City Schools*, 151 Ohio St.3d 12, 2017-Ohio-2734, 85 N.E.3d 694, at ¶ 23-24.

{¶45} Like in *Columbus City Schools*, the property owner's appraisal was vetted and adopted by the BOR. Additionally, in this case, the only information in the record concerning the basis of the auditor's valuation is contained on the property cards filed with the complaints. Those cards indicate that the auditor valued the property using a cost approach, which is disfavored for government-subsidized low-income housing for the specific reason that it "overvalues" the property. *Columbus City Schools* at ¶ 18. The auditor has never defended his initial valuation and has expressed only concurrence with the BOR's reduction. Specifically, the auditor's appraiser at the BOR hearing implicitly rejected the initial valuation, and the auditor's representative on the BOR voted to adopt the reduced valuation. Thus, reinstatement of the BOR's reduced valuation is most appropriate in this case.

## Mootness

{¶46} In the third assignment of error, the property owners challenge the trial court's denial of their Civ.R. 59 motion for a new trial. Our disposition of the first and second assignments of error render this assignment of error moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

## Conclusion

{¶47} For the foregoing reasons, we reverse the judgment of the trial court and reinstate the BOR's valuations.

Judgment reversed and final judgment entered.

**MYERS, P.J.**, and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

15