# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

SCOTT A. SKILES,                    :        APPEAL NO.   C-240254
                                             TRIAL NO.    A-2302883
  and                       :

SAMANTHA A. SKILES                  :

   Plaintiffs-Appellants,      :        *JUDGMENT ENTRY*

  vs.                        :

HAMILTON COUNTY, OHIO,              :
AUDITOR,

  and                       :

HAMILTON COUNTY, OHIO, BOARD        :
OF REVISION,

   Defendants-Appellees.       :

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/6/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *Skiles v. Hamilton Cty. Auditor*, 2025-Ohio-2015.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SCOTT A. SKILES, | : | APPEAL NO. C-240254 |
| and | : | TRIAL NO. A-2302883 |
| SAMANTHA A. SKILES | : | |
| Plaintiffs-Appellants, | : | *O P I N I O N* |
| vs. | : | |
| HAMILTON COUNTY, OHIO, AUDITOR, | : | |
| and | : | |
| HAMILTON COUNTY, OHIO, BOARD OF REVISION, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 6, 2025

*Scott A. Skiles*, pro se,

*Scott A. Skiles*, for Plaintiff-Appellant Samantha Skiles,

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Eric A. Munas*, Assistant Prosecuting Attorney, for Defendants-Appellees.

**ZAYAS, Judge.**

**{¶1}** This appeal arises from an appeal of a decision of the board of revision ("the board") to the court of common pleas under R.C. 5717.05. The appellants, Scott and Samantha Skiles ("the Skileses"), filed a complaint with the board to reduce the value of their residence for the 2022 tax year. After a hearing on the matter, the board issued a decision finding no change in value was warranted. The Skileses appealed the decision to the court of common pleas and the court of common pleas affirmed the board's decision. The Skileses now appeal the trial court's decision, asserting that the trial court failed to make the requisite findings to affirm the board's decision. For the following reasons, we affirm the judgment of the trial court.

## I. *Proceedings Before the Board of Revision*

**{¶2}** On March 31, 2023, the Skileses filed a "Complaint Against the Valuation of Property" for the 2022 tax year, pertaining to their primary residence located in Loveland, Ohio. The complaint reflected that the current value of the residence was set at $535,000, which was the sale price of the property on January 13, 2022. The Skileses requested that the value be instead set at $440,000. Thus, the Skileses were requesting a decrease in the value of $95,000. Included with the complaint was a letter from the Skileses and several supporting documents, including the contract to purchase, the general warranty deed, the auditor's 2022 notice of value change, an appraisal report, several repair invoices, and the residential property disclosure form.

**{¶3}** In the letter, the Skileses explained that two presale inspections were performed and that the "results of those inspections, coupled with the representations made by the seller, for example, on the seller's property disclosure form, led [them] to believe that the Property was generally 'move-in ready.'" However, the Skileses

explained that, since taking possession of the property, they spent "more than $60,000 to repair latent material defects in the Property" including (1) a defective egress window that allowed storm water to enter the basement living space, (2) a defective sewer drain hidden beneath new carpet that allowed raw sewage to enter the basement living space, (3) undisclosed foundation cracks that allowed water to enter the basement living space, (4) undisclosed foundation cracks that allowed water to enter the crawl space, and (5) a defective master shower that leaked through the subfloor and into the crawl space. Further, they claimed that additional repairs, including refinishing the basement, were needed to "return the Property to its advertised condition."

{¶4} The included appraisal report ("the Skileses' appraisal report") claimed the "as is" value of the property as of January 1, 2022, was $440,000. The report states, "The subject property has several recent arms [sic] length transfers. The subject property apparently had hidden defects which will have a negative affect [sic] on both the market value and marketability of the subject property." The report does not specifically assign any negative value based on the hidden defects. The report does include a comment that the property is in "need of repairs" and lists a "cost to cure" of $75,000. However, the report appears to be a standard market-value appraisal based on comparable sales (sales comparison approach) in the area, conducted retrospectively, with certain adjustments made based on condition.

{¶5} On March 3, 2023, the Hamilton County Auditor's Real Estate Department issued a report completed by a certified appraiser ("the auditor's appraiser"), in which the auditor's appraiser asserted an opinion that, based on review of the complaint and the supporting documentation, the Skileses' complaint was "not justified." Therefore, the appraiser recommended that the Skileses appear for a

hearing before the board.

**{¶6}** The auditor's appraiser's opinion appeared to be based on two conclusions. First, the appraiser claimed that it was unknown what the Skileses knew or should have known about the property's condition when they purchased the property since the Skileses did not provide the presale-inspection reports they mentioned. Second, the appraiser took issue with the Skileses' appraisal report, stating,

> After reading the [Skileses' appraisal] report, there are issues that cause the value conclusion to be very questionable. These issues included: not using the best comp available, the subject; not making reasonable adjustments to reflect the subject's recent $250,000 renovation, including making a negative condition adjustment to comp 3 (stating comp #3 is in superior condition) when MLS comments state this property "needs TLC, As Is"; and giving greatest weight in the reconciliation of value to a sale that is not even in the same county as the subject.

**{¶7}** The auditor's appraisal report included MLS data, which showed the previous listings for the subject property and the listings for the comparable sales used in the Skileses' appraisal report. The most recent listing for the subject property indicated "over 250K in renovations!" On the other hand, the listing for comparable 3 stated, "Need TLC/As-is."

**{¶8}** On May 22, 2023, the board issued notice to the Skileses to appear before the board for a hearing on May 25, 2023.

**{¶9}** That same day, the Skileses submitted a new letter to the board, in which they responded to assertions in the auditor's appraisal report. The Skileses' letter

explained, relying on the presale-inspection reports and presale-repair agreements, why they had no knowledge of the defects. This was in response to the comment in the auditor's appraisal report that it was unknown what they knew or should have known about the condition at the time of purchase. The letter also explained why their own appraisal report was reliable evidence of the property's value. The letter included several supporting documents including the seller's inspection report, the buyer's inspection report, a sewer inspection report, a defect notice, and comments from the seller regarding the requested presale repairs.

**{¶10}** Further, at the start of the hearing before the board, the Skileses submitted an additional "repair proposal" in the amount of $25,284.54, which was purportedly an estimate to refinish the basement.

**{¶11}** At the hearing, Scott Skiles testified as to the repairs they made and presented a PowerPoint presentation to the board. The asserted repairs included emergency draining/drying, sewer line replacement, basement waterproofing, crawl space exterior drainage, master shower rebuild, and estimated basement refinishing. Mr. Skiles explained to the board, relying on the submitted documentation, why they had no notice of these issues prior to purchase. Further, the Skileses presented the testimony of their appraiser.

**{¶12}** The Skileses' appraiser testified that, on March 24, 2023, he inspected the property. He said,

> I found the property to be in average good condition and in need
> of many renovations as I had specified in the comment section of the
> improvement section of the appraisal report. Which the repairs I noted
> were landscaping, driveway, drywall, fireplace, subfloor drainage. I
> noticed standing water in the yard the day that I observed the property.

And the complete basement renovation. I had estimated the renovation cost to be $75,000 total, and I believe that was correlated by Mr. Skiles' estimate also.

**{¶13}** When asked about his conclusion that the condition of the property was average to good and how the repairs factored into that conclusion, he said that his rating of the property was as a combination "of the fact that the renovations had been made and because of the number of repairs that needed to be made also. So, it's a combination of renovations and repairs, which is, you know, definitely what this house needed." He also testified as to the comparable sales that he used in his report.

**{¶14}** The auditor's appraiser testified and expressed his disagreement with the Skileses' assertion that they had no notice of the issues and said, "So, my observation of this case is it seems that the buyer relied heavily on the information he was getting from the seller, even though he had two home inspection reports that glaringly talked about many, many, many, many issues." He explained, using the documentation submitted by the Skileses, his belief as to why the Skileses were on notice of the issues. He then explained his opinion as to the issues or inaccuracies of the Skileses' appraisal report. More specifically, the auditor's appraiser took issue with the Skileses' appraiser not using the subject sale in his comparables and rating the house to be in average to good condition based on what were "maybe minor issues with the property." The auditor's appraiser opined that the house was in "very good condition" at the time of sale. More specifically, he said,

I made color photos from the MLS. This is what was in the MLS from when it closed on January 13th, '22, of what the property looked like when it sold. And it is a, you know, I'm not denying that maybe the seller didn't do, you know, the best quality of work on some of these

7

items that later surfaced. But in terms of scope of the renovation, you're looking at, you know, new kitchen, new baths, new flooring, new fixtures, lighting fixtures throughout. It was a very, very attractive home and I think, you know, that these types of things maybe, outweighed the--what were perceived to be maybe minor issues with the property. I just don't want the board to be swayed by the appraiser's opinion that the house was in average to good condition. I mean, this house was in very good condition.

**{¶15}** Further, the auditor's appraiser took issue with the comparable analysis in the Skileses' appraisal report for a number of reasons. He said,

So, anyway, regarding the appraisal, you know, the subject and I -- let me fold back, flip back to the appraisal report here. You know, he's calling some of these comps that, you know, to be in superior condition to the subject, based on his rating or his opinion of the average-to-good. We've got pictures documenting the condition that the thing is in. The MLS, and maybe the owner's note that he submitted in response to mine, he said it's just hearsay. But you know, here at the Auditor's Office, a data source that we consider to be reliable is the MLS. The agent on this said that the -- that this renovation was done at a cost of approximately $250,000. So, I would consider that reliable information.

And then, you know, one of the things he makes an adjustment to Comp Number 3. And so, when I was reviewing this -- and I did supply toward the end of my report the five sales that the appraiser used—and this sale on Windy Hill, which was his Comp Number 3 that

he made a negative condition adjustment of, when you go to the center photo to show the condition the property was in. And Comp Number 3 on Windy Hill, he makes -- saying that that sale was superior condition to the subject. But the realtor puts in there it needs TLC and sold in as-is condition. And yet, he considers that to be superior to the subject.

And then he gave the greatest weight, and I heard [the Skileses' appraiser] saying that they're all in the Loveland School District and so on and so forth, but you know, Loveland it's a -- somewhat unique city in this area in that it spans three counties. It's in Hamilton County, Clermont County, and in Warren County. I think it would be prudent of an appraiser to try to stay in the same county. And so, the comp that he gives most weight to wasn't even in Hamilton County.

**{¶16}** The auditor's appraiser concluded by saying,

So, anyway, those are my observations and my report to the Board Members that I think there's plenty of evidence here in the three inspections that were provided that the owner was -- the buyer was on notice that there were issues with this house, and he consummated the sale at the $535,000, which would tell me that that was a with knowledge, negotiated sale price for the fair market value of the property, and that sale price is a fact rendering the opinion of [the Skileses' appraiser] not really relevant.

**{¶17}** Scott Skiles then briefly responded to some of the board's questions regarding the testimony of the auditor's appraiser and presented a closing argument as to the issues. The board asked a few more questions of Mr. Skiles and their appraiser and then concluded the hearing and proceeded to a vote. Two board

9

members indicated their belief that the sale was an arm's-length transaction. The third member seemed to be questioning whether the Skileses would have paid the sale price had they known of the issues. However, before the discussion finished, one of the board members indicated that the deliberations should conclude and moved for a vote as to whether the sale price should remain the value of the property. The vote passed 2-1.

{¶18} The board memorialized the 2-1 vote for no change in valuation in a hearing worksheet that same day. The board then issued a written notice of its decision on June 7, 2023. The Skileses timely filed a notice of appeal from the board's decision to the court of common pleas on July 7, 2023.

## II. Proceedings Before the Court of Common Pleas

{¶19} In the proceedings before the trial court, the Skileses relied upon the same evidence presented to the board.

{¶20} In their brief to the trial court, the Skileses first asked the trial court to determine whether the sale was an arm's-length sale. They argued that the purchase price "was not the results of an arm's length sale because, despite their due diligence, [they] did not have knowledge of all the relevant facts when they agreed to that price." Thus, they asserted that "a primary question presented is whether [they], acting as willing buyers, would have agreed to the same purchase price if they had such knowledge." They further argued that the board erred in "ignoring" their appraisal as a result of its finding that the sale was the product of an arm's-length transaction. They asserted, "[Our appraiser]'s report serves at least two purposes: it supports Appellants' position that their purchase price was not the result of an arm's length sale, and it establishes the market value of the Property in the absence of an arm's length sale."

**{¶21}** After responsive briefing, a hearing was held in front of the magistrate on December 19, 2023, at which the parties presented oral arguments.[1] The magistrate issued a decision upholding the valuation of the property at $535,000 on February 9, 2024.

**{¶22}** The Skileses objected to the magistrate's decision. They asserted that they objected to the magistrate's decision "(1) because it misapplied Ohio law by failing to consider [their] knowledge of the Property in determining whether an arm's-length sale occurred in the first place, (2) because it misapplied Ohio law by failing to relate [their] subsequent repairs to the Property back to the value of the Property on the tax lien date, (3) because its criticisms of [their] independent appraisal evidence [did] not justify its conclusion, and (4) because sound public policy strongly favors [them]."

**{¶23}** After responsive briefing, the trial court issued a decision overruling the Skileses' objection and adopting the magistrate's decision, in full, finding that the taxable value of the property was correctly set at $535,000. The Skileses timely filed a notice of appeal from the trial court's decision, raising two assignments of error for this court's review. The first assignment of error states, "The trial court erred and misapplied the law in finding that an arm's-length sale occurred when it did not." The second assignment of error states, "Regardless of whether an arm's-length sale occurred, the trial court erred in affirming the auditor's valuation."

### III. Analysis

### A. Standard of Review

**{¶24}** "When reviewing a board of revision's decision pursuant to R.C.

---

[1] The transcript of this proceeding is in the record. However, the transcript was not filed in the trial court until after the notice of appeal of the trial court's decision was filed. Thus, it does not appear that the transcript was presented to the trial court for consideration upon objections.

5717.05, a common pleas court may admit additional evidence, and it 'should consider all such evidence and determine the taxable value through its independent judgment'—in other words, it should render a '*decision de novo*.'" (Emphasis in original.) *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798, ¶ 10, citing *Black v. Cuyahoga Cty. Bd. of Revision*, 16 Ohio St.3d 11, 14 (1985).

**{¶25}** "When [this court] review[s] the judgment of the court of common pleas on a [board of revision] tax appeal, '[this court] will not disturb the factual issue of valuation absent an abuse of discretion.'" *Colerain Capital, LLC v. Hamilton Cty. Auditor*, 2023-Ohio-56, ¶ 9 (1st Dist.), quoting *OTR Hous. Assocs. v. Cincinnati School Dist. Bd. of Edn.*, 2021-Ohio-3231, ¶ 25 (1st Dist.). "'Abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority."'" *Id.*, citing *State v. Austin*, 2021-Ohio-3608, ¶ 5 (1st Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "As in other matters, [this court] review questions of law de novo." *Id.*, citing *OTR Hous. Assocs.* at ¶ 25.

### B. Legal Background

**{¶26}** "The valuation of real property begins with the county auditors, who are required to appraise real property 'as its true value in money.'" *OTR Hous. Assocs.* at ¶ 27, citing R.C. 5713.01(B). "The Ohio Supreme Court has construed this 'to equate in most situations with the amount for which the property would sell on the open market.'" *Id.*, citing *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2017-Ohio-2734, ¶ 14. "This valuation centers on sellers and buyers acting as '"typically motived market participants" who are acting "in their own self interest."'" *Id.* at ¶ 14, citing *Columbus City Schools* at ¶ 14.

**{¶27}** Consistent with the principle, R.C. 5713.03 provides, "In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor may consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes."

**{¶28}** Thus, "[t]he 'best evidence of true value' of real property is generally considered to be the actual sale price of the property in a recent arm's length transaction, i.e., 'the price arrived at by a willing purchaser and willing seller.'" *Brecksville-Broadview Hts. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 2016-Ohio-3166, ¶ 14 (8th Dist.), citing *Meyer v. Cuyahoga Cty. Bd. of Revision*, 58 Ohio St.2d 328, 333 (1976), and *Gides v. Cuyahoga Bd. of Revision*, 2014-Ohio-4086, ¶ 13 (8th Dist.); *accord Gallick v. Franklin Cty. Bd. of Revision*, 2018-Ohio-818, ¶ 28 (10th Dist.), citing *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 2017-Ohio-4415, ¶ 33 ("[U]nder amended R.C. 5713.03, the presumption that '"[t]he best evidence of the 'true value of money' of real property is an actual, recent sale of the property in an arm's-length transaction"' survives."). This rule creates a rebuttable presumption that the sale price reflects the true value. *See Terraza* at ¶ 33-36.

**{¶29}** "'A party seeking an increase or decrease in valuation bears the burden of proof before the board of revision.'" *Schwartz v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-3431, ¶ 18, quoting *Snavely v. Erie Cty. Bd. of Revision*, 78 Ohio St.3d 500, 503 (1997). "To meet that burden, the appellant 'must present competent and probative evidence to make its case'; it is not enough to merely introduce evidence that calls the board of revision's valuation into question." *Id.*, citing *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566 (2001).

**{¶30}** "Evidence of needed repairs, or the cost of needed repairs, while a factor in arriving at true value, will not alone prove true value." *Throckmorton v. Hamilton Cty. Bd. of Revision*, 75 Ohio St.3d 227, 228 (1996). "It is the decrease in value that may result from the need for the repairs that is the important factor to be determined . . . ." *Id.*; *see Gides v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-4385, ¶ 7 (8th Dist.) (holding that, in the absence of evidence or testimony to establish how defects have impacted the property value, a list of needed repairs/defects to a property "are simply variables in search of an equation.").

### C. First Assignment of Error

**{¶31}** Under the first assignment of error, the Skileses first argue that the trial court's decision must be reversed because the trial court failed to make factual findings on the "key issue" of whether they had knowledge of the property's defects when they agreed to the purchase price. They assert that, rather than make such findings, the trial court simply "assumed" an arm's-length transaction occurred and this was legal error as Ohio law required the trial court to consider their lack of knowledge of the defects when "resolving the contested arm's length character of the sale." Further, they assert that the trial court erred in relying on *Kaufman v. Lake Cty. Bd. of Revision*, 1994 Ohio App. LEXIS 5411 (11th Dist. Dec. 2, 1994), as the decision is old, out of district, and relied on an outdated version of R.C. 5713.03.

**{¶32}** As an initial matter, the trial court relied on *Kaufman* for the proposition of law that an arm's-length transaction in Ohio has three characteristics: (1) it is voluntary, i.e., without compulsion or duress; (2) it generally takes place in an open market; and (3) the parties act in their own self-interest. The *Kaufman* decision relied on *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 25 (1989), for this proposition, which is a decision that the Ohio Supreme Court continues to rely on

when discussing the requirements for an arm's-length transaction. *See, e.g., N. Canton City Sch. Dist. Bd. of Edn. v. Stark Cty. Bd. of Revision*, 2018-Ohio-1, ¶ 17, citing *Walters* at 25 ("Whether a transaction occurred at arm's length depends on whether the sale was voluntary, whether it took place on the open market, and whether the parties acted in their own self-interest."); *Lunn v. Lorain Cty. Bd. of Revision*, 2016-Ohio-8075, ¶ 11, citing *Walters* at syllabus ("This court has held that '[a]n arm's-length sale is characterized by these elements: it is voluntary, *i.e.*, without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest.'" (Emphasis in original.)). While it is true that *Kaufman* did discuss the prior (mandatory) version of R.C. 5713.03, the trial court did not rely on *Kaufman* for its discussion of R.C. 5713.03. Thus, the Skileses' argument that the trial court relied on outdated law is without merit.

**{¶33}** Further, while the Skileses point to cases that indicate generally that parties to an arm's-length transaction must be reasonably knowledgeable and/or have knowledge of all relevant facts, none of these cases provide support for their assertion that lack of actual knowledge of the defects in this case would render their knowledge inadequate to uphold the sale as an arm's-length transaction. *See Sapina v. Cuyahoga Cty. Bd. of Revision*, 2013-Ohio-3028, ¶ 21, fn. 2; *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 2012-Ohio-2844, ¶ 40, fn. 3; *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2011-Ohio-2316, ¶ 22, fn. 2; *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2016-Ohio-757, ¶ 29. Consequently, they have failed to show that the trial court erred as a matter of law by failing to make factual findings as to their knowledge of the specific defects in this case.

**{¶34}** The Skileses next argue that the trial court erred in finding that defects which are merely "present" at the time of sale "do not affect the Property's taxable

value." The Skileses, in essence, assert that the trial court's evaluation of the defects was contrary to law where it failed to consider whether the needed repairs justified a reduction in value. Because this argument is more appropriate under the second assignment of error and overlaps some of the arguments there, it will be addressed under the second assignment of error.

**{¶35}** Beyond that, the Skileses fail to assert any other argument for why the trial court "misapplied the law" in finding that the sale was an arm's-length transaction, and the record contains ample evidence from which the trial court could conclude—as it did—that the three, well-established elements for an arm's-length transaction were met in this case. Therefore, we overrule the first assignment of error.

### D. Second Assignment of Error

**{¶36}** In the second assignment of error, the Skileses argue that the trial court failed to properly evaluate their appraisal and also failed to relate their evidence of repairs back to the property's value on the tax-lien date. This overlaps with the Skileses argument under the first assignment of error that the trial court's evaluation of the defects was contrary to law where it failed to consider whether the needed repairs justified a reduction in value.

**{¶37}** After finding that the sale was an arm's-length transaction, the trial court went on to find that the Skileses failed to show that the needed repairs reduced the value of the property.

**{¶38}** As stated above, "Evidence of needed repairs, or the cost of needed repairs, while a factor in arriving at true value, will not alone prove true value." *Throckmorton*, 75 Ohio St.3d at 228. "It is the decrease in value that may result from the need for the repairs that is the important factor to be determined . . . ." *Id.*

**{¶39}** Here, the Skileses' evidence consisted of invoices for repair costs and

16

their appraisal. As an initial matter, while the invoices included costs of repairing the defects, the invoices went further and included the costs for repairing the *damage* that purportedly occurred as a result of the defects. Further, while their appraisal mentions a "cost to cure," it does not offer any specific opinion as to how the alleged defects would have decreased the value of the home as of the tax-lien date. Therefore, there is no evidence that directly addresses how or to what extent the defects would have decreased the value of the home had they been known at the time of the sale.

**{¶40}** Instead, the Skileses' appraisal report—which is the only evidence of value—appears to be a typical—albeit retroactive—market-value appraisal using the sales-comparison approach with similar properties in "average/good" condition. The Skileses' appraiser testified that he considered the subject property to be in average/good condition because of the need for repairs, as indicated in his report.

**{¶41}** The trial court found that the appraisal was not credible evidence of true value where the appraised value was based on the costs of repairs, completed and planned. We cannot find error in this determination where, as stated above, the cost of repairs is a factor in arriving at true value, but does not, alone, prove true value. *See Gides*, 2015-Ohio-4385, ¶ 7 (8th Dist.).

**{¶42}** Consequently, without evidence reflecting how the asserted defects decreased the value of the home as of the tax-lien date, we cannot find error in the trial court's determination that Skileses failed to show that the needed repairs reduced the value of the property as of the tax-lien date. Therefore, because the Skileses failed to present sufficient evidence to rebut the presumption that the sale price reflected the true value of the home as of the tax-lien date, we cannot hold that the trial court abused its discretion in determining the value of the property. Accordingly, the second assignment of error is overruled.

### *IV.    Conclusion*

**{¶43}** For the foregoing reasons, we overrule the assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY, P.J.,** and **MOORE, J.,** concur.